**Steven Mark JOHNSON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 6–87–089–CR.**

Court of Appeals of Texas,
Texarkana.

April 25, 1989.

Ronald D. Hinds, Dallas, for appellant.

Frank Long, Dist. Atty., Sulphur Springs, for appellee.

GRANT, Justice.

Johnson was convicted of murder in a trial by jury. The jury also made an affirmative finding that Johnson used a deadly weapon and set his punishment at forty years' confinement with a $10,000 fine.

Johnson brings four points of error in which he contends (1) that the jury charge on punishment was fundamentally defective because without prior notice, a charge on his use of a deadly weapon was submitted, (2) that the evidence was legally insufficient to support the jury's verdict because the State failed to negate his defense of sudden passion, (3) that the jury charge on guilt/innocence was fundamentally defective, and (4) that the trial court committed reversible error in admitting a dying declaration into evidence.

Steven Mark Johnson fought with his wife, Kelly Johnson, at their home after spending a night out on the town. She was hospitalized the following morning for her injuries. Johnson made a statement to the police (which he later recanted) stating that she had been beaten while in the restroom of one of the clubs. According to the hospital records, Kelly suffered numerous internal injuries, but her chances of recovery were considered good. She underwent immediate exploratory surgery, and the doctors repaired a tear in her liver. On the sixth day of her hospitalization, she began to complain of pain in her right shoulder and back. Shortly thereafter, she died.

There is testimony that the victim had a violent temper and was a strong-willed individual. On the night she was injured, according to Johnson's testimony, after returning home from a club, she rejected his amorous advances. He testified that he tried to go to sleep, but she was "wired" and wanted to go back out. This conversation escalated into a shouting match. She told him in graphic detail that she had been sexually involved with the Mexicans she worked with and was going to go out and have sexual intercourse with his best friend. She left the house, apparently locking the door behind her. Johnson went to sleep. Shortly thereafter she broke down a door to get back into the house. They began to argue again. Johnson testified that "she continued to tell me what she had been doing ... She elaborated on it a great deal, you know, telling me about how good it was and how many people she had been sleeping with. I lost control." Johnson then began hitting her. The forensic examiner stated that she died of complications of the injuries sustained in the fight.

■ Johnson first contends that the jury charge on the punishment was fundamentally defective because it was error for the trial court to allow the jury to find that a deadly weapon was used in the commission of the offense. His complaint is based upon the fact that there was no separate allegation of a deadly weapon in the indictment. This results in a restriction of parole eligibility under Tex.Code Crim.Proc. Ann. art. 42.18, § 8(c) (Vernon Supp.1989).

The indictment charged Johnson with causing death by striking her with his feet and hands. The Court of Criminal Appeals recently reconsidered the notice requirement to seek a deadly weapon finding in *Ex parte Beck*, No. 70, 169 769 S.W.2d 525 (Tex.Crim.App. Mar. 22, 1989) (not yet reported). The Court in *Beck* first determined that any allegation in the indictment

that "a death *was caused* by a named weapon or instrument *necessarily includes* an allegation that the named weapon or instrument" was a deadly weapon. Notice is thus provided that use of a deadly weapon will be an issue in the prosecution. The Court also states in the *Beck* opinion that if an indictment contains an express averment of the use of a deadly weapon, a finding of "guilty as charged in the indictment" is enough to act as an affirmative finding for purposes of Tex.Code Crim. Proc.Ann. art. 42.12, § 3g (Vernon Supp. 1989).

The indictment in *Beck* alleged that the defendant caused the death of an individual by shooting him with a gun. The Court holds that this is sufficient to supply notice. However, since the indictment does not specifically allege that she used a "deadly weapon," if the jury had returned a finding of guilty as charged in the indictment, that finding would have been insufficient standing alone to provide the *affirmative finding* that she used a deadly weapon required by Article 42.12.

As applied to the present case, the indictment alleges that Johnson caused her death by striking the head, trunk and extremities of her body with his feet and hands. Under the rationale of *Beck*, this is sufficient to provide notice. If the jury had simply found him guilty as charged in the indictment, the finding would have been insufficient to constitute the affirmative finding required by the Code. However, in the present case, as in *Beck*, we have a specific affirmative finding by the jury that the defendant's use of his hands and feet constituted the use of a deadly weapon. In all pertinent respects, this case is identical to *Beck*. Accordingly, notice was sufficient, and the affirmative finding by the jury was proper.

■ Johnson next contends that the evidence was legally insufficient to support the jury verdict because he raised the issue of "sudden passion," and the State failed to negate sudden passion beyond a reasonable doubt; therefore the evidence was insufficient to support a verdict of murder. Tex. Penal Code Ann. § 19.02 (Vernon 1989).[1]

Because the issue was raised as to whether Johnson acted "under the immediate influence of sudden passion arising from an adequate cause," the absence of sudden passion became an element of the offense of murder. *Gold v. State*, 736 S.W.2d 685, 689 (Tex.Crim.App.1987). The State must carry the burden of production and persuasion as to that element. The factfinder's rejection of Johnson's assertions that he did act under such passion cannot alone supply that element and comply with due process and due course of law.

This Court must apply the standard of review of the sufficiency of the evidence mandated by *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) and *Gold v. State*, 736 S.W.2d 685, and determine whether there is sufficient evidence, when viewed in the light most favorable to the verdict, to support the jury's finding.

There are several bases upon which a properly instructed jury can reject sudden passion, even though the issue was raised by the evidence. If the jury finds there was no provocative conduct, or at least none occurring at the time of the offense, then of course there is no finding of cause at all, much less adequate cause. Alternatively, the jury could find there was provocative conduct, even adequate to render an ordinary man incapable of cool reflection, but that nevertheless the defendant himself acted coolly and deliberately. Finally, the jury could find there was provocative conduct, that the defendant was in fact

---

1. The jury was provided the following definitions:

    "Sudden passion" means passion directly caused by and arising out of provocation by the individual killed or another acting with the person killed, which passion arises at the time of the offense and is not solely the result of former provocation.

    "Adequate cause" means cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection.

provoked, but that the provocation was not such as would render a man of ordinary temper incapable of cool reflection. *Gold*, 736 S.W.2d at 690; *Gonzales v. State*, 717 S.W.2d 355, 361 (Tex.Crim.App.1986) (Clinton, J., dissenting).

The State argues that the following evidence supports the jury's verdict: (1) testimony that Johnson lied to the police about the cause of his wife's injuries, (2) testimony from a deputy sheriff that he had discovered bloody towels and toilet paper hidden in a woodburning stove, (3) testimony from Johnson's ex-wife about his violent tendencies, and (4) Johnson's testimony that they fought, she left, and then after returning, they fought again. Most of this evidence is concerned with events that occurred after the killing. It is not reflective of the sort of preplanning that would tend to contradict a sudden passion defense. Johnson's testimony that she left and later returned could support a suggestion that he had time to cool down, except that the argument was renewed on her return.

The evidence that directly supports a lack of "sudden passion" is that of the nature of the victim's injuries. Johnson did not injure her with a single blow in reaction to her statements. Instead, he hit and kicked her repeatedly. She was bruised from head to foot, had broken ribs and her face was swollen beyond recognition. Even if the provocation was sufficient to have provoked him to strike her initially, the jury could find from the evidence that he continued to inflict the injuries that led to her death after the sudden passion would have subsided in a person of ordinary temper. We find this to be a basis, in addition to those set out in *Gold* and *Gonzeles*, which supports the jury's finding. Furthermore, the jury could also have simply believed that her statements taunting him with tales of her claimed sexual escapades were insufficient to constitute an adequate cause for sudden passion. So long as there is more than a "mere modicum" of evidence to support the jury finding, we must find the evidence sufficient to support its verdict. *Jackson v. Virginia*, 443 U.S. at 318–19, 99 S.Ct. at 2788–89, 61

L.Ed.2d at 573; *Gold v. State*, 736 S.W.2d at 690.

■ Johnson next contends that the charge upon which the jury convicted him was fundamentally defective and that the error was so egregiously harmful as to deprive him of a fair and impartial trial. His complaint is based upon the application paragraphs of the jury charge:

Now, if you find from the evidence beyond a reasonable doubt that on or about the 19th day of April, 1987, in Franklin County, Texas, the defendant, Steven Mark Johnson, did intentionally or knowingly cause the death of Kelly Johnson by striking the head, trunk, and extremities of her body with his feet and hands, *or* did then and there intend to cause serious bodily injury to the said Kelly Johnson and with said intent to cause such serious bodily injury did commit an act clearly dangerous to human life, to wit, striking the head, trunk, and extremities of her body with his feet and hands, as alleged in the indictment, and that the defendant, in so acting, was not acting under the immediate influence of sudden passion arising from an adequate cause, then you will find the defendant guilty of murder. (Emphasis added).

Johnson contends that the latter alternative allows the jury to convict him of the offense of murder without finding that the act he committed caused a death. This argument is correct. The paragraph as presented to the jury was clearly erroneous. *Almanza v. State*, 686 S.W.2d 157 (Tex.Crim.App.1984), requires that where charge error has not been objected to, as in the present case, reversal is required only if the harm is so egregious that the defendant has not had a fair and impartial trial. The degree of harm must be determined in light of the entire jury charge, the state of the evidence, including contested issues and the weight of probative evidence, the argument of counsel and any other relevant information revealed by the record as a whole.

The charge goes on to state that "[y]ou are further instructed that before a person can be guilty of murder ... he must have

intentionally or knowingly caused the death, or he must have intended to cause serious bodily injury and have committed an act clearly dangerous to human life that caused the death of deceased." In addition, Johnson's counsel correctly stated the charge during his jury summation, while discussing the various forms of homicide upon which the jury could convict. If the erroneous section of the charge stood alone, egregious harm to the defendant could be presumed as it would improperly permit conviction for an assault not resulting in death. However, when examined in context of the full trial proceedings, argument and the entire charge as required by *Almanza,* the harm caused by this omission is not egregious.

■ In his final point of error, Johnson contends that the trial court committed reversible error in allowing the testimony of a nurse about the "dying declaration" of the victim. The rule on the admissibility of such evidence is codified at Tex.R.Crim. Evid. 804(b)(2): *"Dying Declarations.* A statement made by a declarant while believing that his death was imminent, concerning the cause or circumstances of what he believed to be his impending death." [2]

The nurse testified that the statement made to her concerned the cause of the victim's injuries and that the victim had told her that she thought she was going to die. The victim had also asked the nurse several times if she were dying, stating that she had been beaten before, but had never hurt so badly. Under the plain language of the rule, it is not necessary that there be a medical opinion that the declarant is dying, but only that she believes that she is dying. The evidence is clearly sufficient to justify admission of the testimony as an exception to the hearsay rule.

In addition, this information was also placed before the jury by the admission of the defendant. The fact established by her "dying declaration" was that her husband had caused her injuries. This fact was not contested, and this evidence was cumulative and could not have harmed appellant in any event.

We affirm the judgment of the trial court.

---

**2.** In adopting this rule, the Court of Criminal Appeals repealed Tex.Code Crim.Proc.Ann. art. 38.20, which required proof that the declarant believed there was no hope of recovery, that the declarant actually be dead at the time the statement was proffered and that the declaration not be made in response to leading questions.