Steven Mark JOHNSON, Appellant,

v.

The STATE of Texas, Appellee.

No. 824–89.

Court of Criminal Appeals of Texas, En Banc.

July 3, 1991.

Rehearing Denied Sept. 18, 1991.

Ronald D. Hinds, on appeal only, Dallas, for appellant.

J. Frank Long, Dist. Atty., Alwin A. Smith, Asst. Dist. Atty., Sulphur Springs, and Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

McCORMICK, Presiding Judge.

Appellant, Steven Mark Johnson, was convicted of murder in a trial by jury. After making an affirmative finding that appellant used a deadly weapon, the jury assessed punishment at forty years' confinement and a $10,000 fine. The Texarkana Court of Appeals affirmed the conviction and held, *inter alia*, that (1) appellant was notified in the indictment that "use of a deadly weapon" would be an issue in the prosecution and (2) since there was more than a "mere modicum" of evidence, the evidence was sufficient to support the jury verdict. *Johnson v. State*, 770 S.W.2d 72 (Tex.App.–Texarkana 1989). This Court granted appellant's petition for discretionary review to examine both of these holdings. We will affirm appellant's conviction.

Appellant and his wife had a history of domestic trouble and on April 19, 1987, after spending a night out on the town they fought. The fighting began immediately upon their return home; appellant's wife was "wired" and wanted to go back out. Appellant, however, after having his amorous advances rejected by his wife, was tired and wanted to go to sleep. A shouting match commenced with appellant's wife telling him in graphic detail that she had been sexually involved with co-workers and that she was leaving at once to go have sex with his best friend. She left, locking the door behind her, and appellant went to sleep. Shortly thereafter, appellant's wife returned and broke a window to get in the house. A second confrontation ensued, but this time the shouting escalated into an exchange of blows.

The next morning appellant's wife was hospitalized and underwent immediate exploratory surgery; doctors had to repair a tear in her liver. She had numerous other internal injuries, but her chances of recov-

ery were considered good by the treating physicians. Nevertheless, appellant's wife died six days later. Appellant was indicted for causing the death of his wife "by striking the head, trunk, and extremities of her body with his feet and hands."

At trial, appellant testified that on the night of the fight, "she [his wife] continued to tell me what she had been doing ... She elaborated on it a great deal, you know, telling me about how good it was and how many people she had been sleeping with. I lost control." Appellant testified that, because of this, he began hitting and kicking her. After the jury was properly instructed on both murder and manslaughter, see *Cobarrubio v. State*, 675 S.W.2d 749 (Tex.Cr.App.1983), they found appellant guilty of murder and expressly found that appellant had used a deadly weapon in the course of the offense.[1]

█ Appellant first contends the indictment did not notify him of the State's intent to seek a finding on use of a deadly weapon because it did not employ any form of language that would provide notice nor did it expressly refer to "deadly weapon" or a "deadly weapon per se." This Court stated in *Ex parte Beck*, 769 S.W.2d 525, 526 (Tex.Cr.App.1989), that any allegation in an indictment that death was caused by a named weapon or instrument *"necessarily* includes an allegation that the named weapon or instrument was, 'in the manner of its use ... capable of causing' (since it *did* cause) death." (Emphasis in the original.) See V.T.C.A., Penal Code, Section 1.07(a)(11)(B) (deadly weapon means anything that in the manner of its use or intended use is capable of causing death or serious bodily injury). Notice is thus provided that use of a deadly weapon will be an issue in the prosecution. *Beck*, 769 S.W.2d at 526; *Ex parte Brown*, 773 S.W.2d 332, 333 (Tex.Cr.App.1989); *Luken v. State*, 780 S.W.2d 264, 266 (Tex.Cr.App. 1989).

The allegation in the indictment charging appellant with "causing death by striking with [his] feet and hands" clearly gave notice that the State would attempt to prove "feet and hands" were used as deadly weapons and, consequently, that the prosecution would seek an affirmative finding as to appellant's use of these deadly weapons. See *Mixon v. State*, 804 S.W.2d 107 (Tex.Cr.App.1991) (death caused by "unknown object" provides notice); *Gilbert v. State*, 769 S.W.2d 535 (Tex.Cr.App.1989) ("serious bodily injury caused by placing complainant in hot liquid" provides notice); *Speering v. State*, 797 S.W.2d 36 (Tex.Cr. App.1990) ("death caused by strangulation and stabbing" provides notice); *Rice v. State*, 771 S.W.2d 599 (Tex.App.–Houston [14th Dist.] 1989, no pet.) ("death caused by gasoline" provides sufficient notice). Accordingly, the Court of Appeals correctly determined the notice provided by the indictment in this case was sufficient and the affirmative finding by the jury was proper.

Appellant next contends the evidence was legally insufficient to support the jury verdict of murder because he raised the issue of "sudden passion," and the State failed to negate sudden passion beyond a reasonable doubt.

In Texas, a person commits murder if he "intentionally or knowingly causes the death of an individual." V.T.C.A., Penal Code, Section 19.02. However, if that person "causes the death of an individual under circumstances that would constitute murder under Section 19.02 of [the] Code, except that he cause[s] the death under the immediate influence of sudden passion arising from an adequate cause," he can only be convicted of voluntary manslaughter. V.T.C.A., Penal Code, Section 19.04. These two separate offenses thus appear to require proof of the same culpable mental state, "intentional or knowing," but the addition of "sudden passion" to Section 19.04 in effect tempers the culpability of the mental state that would otherwise turn an individual's action into murder.[2] Hence, sudden passion appears to be "in the na-

1. Such an affirmative finding results in restriction of parole eligibility under Article 42.18, Section 8(c), V.A.C.C.P.

2. V.T.C.A., Penal Code, Section 19.04 provides:

" * * *
"(b) 'Sudden passion' means passion directly caused by and arising out of provocation by the individual killed or another acting with

ture of a defense to murder that reduces that offense to the lesser included offense of voluntary manslaughter." *Braudrick v. State*, 572 S.W.2d 709, 711 (Tex.Cr.App. 1978).

Nevertheless, in a plurality opinion subsequent to *Braudrick*, this Court held that sudden passion is not a defense or even in the nature of a defense to murder. *Bradley v. State*, 688 S.W.2d 847, 849 (Tex.Cr. App.1985). Rather, in a case such as the one at bar, where murder is charged but the evidence raises the issue of sudden passion, the negation of sudden passion becomes an "implied element" of the offense of murder.[3] *Bradley*, 688 S.W.2d at 851.

This manipulation of "sudden passion" has placed the State in the ludicrous posi-

tion of having to prove a negative, that is, the absence of "sudden passion." See *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368, 375 (1970) (United States Supreme Court declared that due process "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged"). In *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), the Supreme Court expressly declared that due process "requires the prosecution to prove beyond a reasonable doubt the absence of the heat of passion on sudden provocation when the issue is properly presented in a homicide case." But cf. *Patterson*, 432 U.S. at 206–207, 97 S.Ct. at 2324–2325, 53 L.Ed.2d at 289–290 (New

---

the person killed which passion arises at the time of the offense and is not solely the result of former provocation.

"(c) 'Adequate cause' means cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection."

**3.** The plurality opinion in *Bradley* reasoned that Article 37.09(1), V.A.C.C.P., requires a lesser included offense "to be established by proof of the same or less than all the facts required to establish the ... offense charged." Therefore, murder (or the "greater" offense) must require proof of a greater number of facts, or at least the same number of facts, as the offense of manslaughter for manslaughter to be charged as a "lesser included offense" of murder. The plurality then "engrafted" the fact of the absence of sudden passion on the offense of murder in an attempt to qualify manslaughter as a lesser offense of murder. *Bradley*, 688 S.W.2d at 851.

By redrafting the murder statute to make sudden passion an "implied element," the *Bradley* plurality forced the State to bear the onerous burden of proving a negative—the absence of sudden passion. See *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975); see also *Id.* at 421 U.S. at 701–702, 95 S.Ct. at 1891, 44 L.Ed.2d at 521 (Supreme Court noting the heavy burden of negating sudden passion).

We now acknowledge that the *Bradley* manipulation of the murder statute (and the consequential shifting of the burden of proof) was unnecessary. Manslaughter could qualify as a lesser included offense of murder under Section (3) of Article 37.09, V.A.C.C.P., which permits an offense to be charged as a lesser included offense if "it differs from the offense charged only in the respect that a less culpable mental state

suffices to establish its commission." Without this unwarranted interpretation of the Code, "sudden passion" would be "in the nature of a defense" and would be treated as a defense under the Code. See V.T.C.A., Penal Code, Section 2.04. Consequently, the State would not be constitutionally required to prove the absence of sudden passion. See *Patterson v. New York*, 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977) (New York law requiring defendant to prove affirmative defense of extreme emotional disturbance to reduce second-degree murder to manslaughter does not violate due process); *Martin v. Ohio*, 480 U.S. 228, 107 S.Ct. 1098, 94 L.Ed.2d 267 (1987) (Ohio law placing burden of proving self-defense on defendant does not violate due process). But cf., *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979) (presumption which shifted burden of persuasion on culpable mental state violated Due Process). Furthermore, the *Bradley* plurality treated the murder statute like the Penal Code did prior to its amendment in 1973 when manslaughter was not identified as a separate offense. See Articles 1256 and 1257c, V.A.C.P. (1925). *Bradley* has thus served to further entangle an already convoluted area of the law. The State, however, has not yet asked us to review the plurality opinion in *Bradley*.

The Legislature could easily resolve this muddled relationship between murder and manslaughter by either making "sudden passion" a mitigating issue to be considered in the punishment phase of a trial for murder or drafting it as an affirmative defense like that in *Patterson*, supra. See *Bradley*, 688 S.W.2d at 853 n. 13 and at 853 (Miller, J., concurring); *Castillo–Fuentes v. State*, 707 S.W.2d 559, 565–566 (Tex.Cr.App. 1986) (Teague, J., concurring); *Daniel v. State*, 668 S.W.2d 390, 398–400 (Tex.Cr.App.1984) (Miller, J., concurring).

York can require defendant in a prosecution for second degree murder to prove the affirmative defense of extreme emotional disturbance in order to reduce the crime to manslaughter); *Martin*, 480 U.S. at 233, 107 S.Ct. at 1102, 94 L.Ed.2d at 274 (Ohio does not violate due process by placing burden of proving self-defense [or any affirmative defense] on defendant charged with committing aggravated murder).[4]

The Supreme Court observed in *Mullaney* that:

"It has been suggested ... that because of the difficulties in negating an argument that the homicide was committed in the heat of passion the burden of proving this fact should rest on the defendant. No doubt this is often a heavy burden for the prosecution to satisfy. The same may be said of the requirement of proof beyond a reasonable doubt of many controverted facts in a criminal trial. But this is the traditional burden which our system of criminal justice deems essential.

"Indeed, the Maine Supreme Judicial Court itself acknowledged that most States require the prosecution to prove the absence of passion beyond a reasonable doubt. [citation omitted]. Moreover, the difficulty of meeting such an exacting burden is mitigated in Maine where the fact at issue is largely an 'objective, rather than a subjective, behavioral criterion.' [footnote omitted]. In this respect, proving that the defendant did not act in the heat of passion on sudden provocation is similar to proving any other element of intent; it may be established by adducing evidence of the factual circumstances surrounding the commission of the homicide." *Mullaney*, 421 U.S. at 701–702, 95 S.Ct. at 1891, 44 L.Ed.2d at 521.

■ Therefore, if the issue of "sudden passion" is raised but a jury finds a defendant guilty of the offense of murder as alleged in the indictment, this Court will make two determinations in a sufficiency

analysis: "(1) whether the evidence was sufficient to establish the offense of murder and (2) whether the evidence was sufficient to disprove the issue of [sudden passion]." *Jefcoat v. State*, 644 S.W.2d 719, 725 (Tex.Cr.App.1982) (panel opinion and rehearing denied by Court en banc). "To prove the absence of sudden passion, the State may present evidence tending to establish its converse—e.g., that at the moment he intentionally or knowingly killed, appellant was capable of, and did in fact act with cool reflection, in spite of circumstances that may well have been provocative." *Gold v. State*, 736 S.W.2d 685, 690 (Tex.Cr.App.1987).

■ For example, a jury could reject sudden passion, even though it was raised by the evidence,

"if the jury finds there was no provocative conduct, or at least none occurring at the time of the offense, then of course there is no finding of cause at all, much less 'adequate cause.' Alternatively, the jury could find there was provocative conduct, even adequate to render an ordinary man incapable of cool reflection, but that nonetheless, the defendant himself acted coolly and deliberately. Finally, it could find there was provocative conduct, that the defendant was in fact provoked, but that the provocation was not such as would render a man of ordinary temper incapable of cool reflection." *Gold*, 736 S.W.2d at 690, n. 3, citing *Gonzales v. State*, 717 S.W.2d 355, 361 (Tex.Cr.App. 1986) (Clinton, J., dissenting.)

A jury may not, however, find facts necessary to establish the absence of sudden passion "purely on the basis of its disbelief of the accused's contrary assertions"; the State bears the burden of presenting the factfinder with sufficient evidence to negate any claim of sudden passion beyond a reasonable doubt. *Gold*, 736 S.W.2d at 689.

■ When this Court is called upon to evaluate the sufficiency of evidence, we determine "whether, after viewing the evi-

4. See Rosenberg, *Winship Redux: 1970 to 1990*, 69 Tex.L.Rev. 109 (1990), comparing *Mullaney*, *Patterson,* and *Martin*.

dence in the light most favorable to the verdict, *any* rational trier of fact could find the essential elements of the crime beyond a reasonable doubt." See *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in the original); *Moreno v. State,* 755 S.W.2d 866, 867 (Tex.Cr.App.1988); *Butler v. State,* 769 S.W.2d 234, 237 (Tex.Cr.App. 1989).[5] We further explained the correct way to apply the *Jackson* standard in *Moreno v. State:*

> "The court is never to make its own myopic determination of guilt from reading the cold record. It is not the reviewing court's duty to disregard, realign or weigh evidence. This the factfinder has already done. The factfinder, best positioned to consider all the evidence first-hand, viewing the valuable and significant demeanor and expression of the witnesses, has reached a verdict beyond a reasonable doubt. Such a verdict must stand unless it is found to be irrational or unsupported ... by the evidence, with such evidence being viewed under the *Jackson* light. Concrete application of the *Jackson* standard is made by resolving inconsistencies in the testimony in favor of the verdict." 755 S.W.2d at 867 (footnote omitted).[6]

We shall now address appellant's claim of insufficient evidence using the *Jackson* standard as construed by *Moreno.*

First, a rational factfinder could decide that the wife's statements taunting appellant with tales of her claimed sexual escapades were insufficient to constitute an "adequate cause" for sudden passion. Appellant testified that "[s]he had said things like that to me before." In fact, appellant

did not strike his wife the first time that night she taunted him with the statements. Rather, when she threatened to go sleep with his best friend, he merely told her "just go ahead and go." Appellant testified that after watching her drive off, he lay down to go to sleep. When appellant's wife returned and the second fight began, appellant admits that she did not taunt him with anything that he had not heard before. Indeed, he confessed that he had "cooled down" by the time she returned. In addition, there was testimony that appellant had a bad temper; not only had he previously battered his wife (she had been admitted to the hospital in February of 1987), but appellant had also physically abused his first wife.

Moreover, even if the jury did believe the taunts were sufficient to provoke appellant initially, a rational factfinder could still determine that appellant continued to inflict the injuries leading to his wife's death long after "sudden passion" would have subsided in a person of ordinary temper. Appellant testified that when his wife returned the second time, he tried to calm her down.

> "I wasn't going to fight with her. She'd hurt me bad enough. There was no use in having anything to do with her anymore. She then told me what she'd been doing. What she was going to continue to do. She told me it was over. And I told her it was over and I couldn't see no point in pursuing the issue any further ... She continued to want to fight. She come up and was pounding on my chest. I grabbed hold of her hands to make her quit and try to get her just to leave."

---

5. The Court of Appeals applied *Jackson,* but incorrectly stated that "[s]o long as there is more than a 'mere modicum' of evidence to support the jury finding, we must find the evidence sufficient to support its verdict." *Johnson,* 770 S.W.2d at 75, following *Gold* 736 S.W.2d at 690. We have expressly disavowed this language in *Torres v. State,* 785 S.W.2d 824, 825 (Tex.Cr.App.1990), and clearly rejected the "mere modicum" test for sufficiency analysis in *Butler v. State,* 769 S.W.2d 234, 237–239 (Tex.Cr. App.1989).

6. Judge White did use the language "or unsupported by more than a 'mere modicum' of the

evidence," in his *Moreno* opinion, but, as discussed above in note 4, we have expressly disavowed use of this language. In his concurring opinion in *Butler v. State,* 769 S.W.2d 234 (Tex. Cr.App.1989), Judge White acknowledged that the "mere modicum" standard of review is now defunct. However, the simple editing of this section does not alter "the most important aspect of *Moreno,*" which is "its discussion of the actual degree of evidence necessary to support the jury's verdict." See *Butler,* 769 S.W.2d at 243 (White, J., concurring).

At this point, appellant stated that they began to exchange blows while outside on the carport. His wife subsequently ran to her car and attempted to leave, but appellant testified that he pulled her out of the car and "more or less led her back in the house" as she continued to scream and fight. He confessed that he was angry, but stated:

> "I wanted to calm her down and talk rationally with her and just explain to her that it wasn't worth it. She continued to tell me what she'd be [sic] doing, and she was very elaborate. She elaborated on it a great deal, you know, telling me about how good it was and how many people she'd been sleeping with. I lost control."

Appellant admitted that he had no idea how many times he struck her, but the very nature of his wife's injuries reveals that appellant did not strike her with a single blow in reaction to her taunts or in an attempt to make her cease taunting.[7] Rather, he hit and kicked her repeatedly, causing broken ribs, serious internal injuries, and a face swollen beyond recognition. Furthermore, when the fighting did finally cease, appellant picked his wife up off the floor and left her in the bathroom while he went to bed and once again fell asleep. He had no idea how long the encounter took. We concede that there are contradictions in the testimony. But if these contradictions are resolved in favor of the verdict pursuant to our guidelines in *Moreno*, there is clearly enough evidence for any rational juror to find that, even if provoked, appellant either began or continued to strike his wife when a man of ordinary temper would have exercised restraint.

Accordingly, we hold that a rational trier of fact could find the absence of either "adequate cause" or "sudden passion" beyond a reasonable doubt; therefore, there is sufficient evidence to support the jury's verdict of murder.

The judgment of the Court of Appeals is affirmed.

7. Appellant testified that he was 6 feet tall and weighed 165 pounds; his wife was only 5 feet 5 inches tall and weighed about 115 pounds.

CAMPBELL, J., concurs in the result.

MALONEY, J., dissents.

CLINTON, Judge, concurring on appellant's petition for discretionary review.

I agree with the majority's ultimate resolution of appellant's second ground for review here. In my view the court of appeals correctly affirmed appellant's conviction on authority of this Court's decision in *Gold v. State*, 736 S.W.2d 685 (Tex.Cr.App.1987), even allowing for our later rejection of *Gold*'s regrettable "mere modicum" articulation of the standard, in *Butler v. State*, 769 S.W.2d 234 (Tex.Cr.App.1989). The majority overreaches, however, to "acknowledge" that the holding of the plurality in *Bradley v. State*, 688 S.W.2d 847 (Tex.Cr.App.1985), since endorsed by a majority of the Court in cases such as *Gold* and *Lawrence v. State*, 700 S.W.2d 208 (Tex.Cr.App.1985), was somehow "unnecessary." At 710, n. 3. The Court has a short memory indeed.

In *Braudrick v. State*, 572 S.W.2d 709, at 711 (Tex.Cr.App.1978), a panel of the Court held:

> "that causing death 'under the immediate influence of sudden passion arising from an adequate cause' is in the nature of a defense to murder that reduces the offense to the lesser included offense of voluntary manslaughter, and that the State need not prove such influence beyond a reasonable doubt to establish voluntary manslaughter, but that if raised by the evidence it must prove the absence of such influence beyond a reasonable doubt to establish murder."

It is apparent from this language, first, that the so-called "shifting of the burden of proof" inherent in requiring the State to disprove sudden passion whenever that issue is raised by the evidence in order to obtain a murder conviction, at 710, n. 3, had already occurred in *Braudrick*, and was not a "manipulation" novel to *Bradley*.

However "ludicrous" this burden might be, *Bradley* did not impose it for the first time.

The problem with the holding in *Braudrick* is that it failed to acknowledge that voluntary manslaughter, as promulgated in § 19.04 of the 1974 Penal Code, is an offense in its own right. It may form the basis of an indictment as such; indeed, under certain undisputed facts presented to a grand jury, it might be incumbent upon a prosecutor to draft an indictment in that way. See Article 2.01, V.A.C.C.P. And in a prosecution for voluntary manslaughter it would surely violate basic due process and due course of law to relieve the State of proving the element of sudden passion.

Nevertheless, in cases such as *Paige v. State*, 573 S.W.2d 16 (Tex.Cr.App.1978), the Court held in a prosecution for murder that the evidence was sufficient to support a conviction for voluntary manslaughter even though it did not raise, much less prove by sufficient evidence, the element of sudden passion. The basis for this holding was the old legal aphorism that proof of a greater offense will necessarily sustain a conviction for a lesser included offense. See also *Daniel v. State*, 668 S.W.2d 390 (Tex.Cr. App.1984). The innovation in *Bradley* was to point out that this aphorism does not hold true in every case of homicide because of the peculiar relationship between murder and voluntary manslaughter.

The offense of voluntary manslaughter is murder "except that" the murder must have been committed while the actor was "under the immediate influence of sudden passion arising from an adequate cause." V.T.C.A. Penal Code, § 19.04. Murder is a first degree felony; voluntary manslaughter is a second degree felony. Thus, voluntary manslaughter is clearly a "lesser" offense in terms of prescribed punishment. In view of the added element of "sudden passion" necessary to prove the offense of voluntary manslaughter, however, it does not readily fit as a "lesser *included* offense" of murder within the definitions contained in Article 37.09, V.A.C.C.P. For surely voluntary manslaughter is not, at least on the face of it, "established by proof of the same or less than all the facts

required to establish commission of" a murder. Article 37.09(1), supra. Nor, as the majority would have it today, is voluntary manslaughter a lesser included offense in that "it differs from [murder] only in the respect that a less culpable mental state suffices to establish its commission." Article 37.09(3), supra. At 710, n. 3. Because voluntary manslaughter is murder plus an additional element, like murder it requires that the actor's conduct be intentional or knowing.

*Braudrick* itself rendered voluntary manslaughter a lesser included offense under the terms of Article 37.09(1), supra, by the artifice of engrafting an "implied" element of *lack* of sudden passion in any murder prosecution in which the issue of sudden passion is raised. *Bradley* fine-tuned *Braudrick*, accepting its rationale for finding voluntary manslaughter to be a lesser included offense for murder when sudden passion is raised, while rejecting the characterization of voluntary manslaughter as "in the nature of a defense to murder," with the observation that, "[w]hile we understand the reasoning behind that construction, finding that in some circumstances voluntary manslaughter may be a lesser included offense to murder would have sufficed." 688 S.W.2d at 849. *Bradley* also corrected the conceptual error of cases like *Paige*, supra, (which may have derived from thinking of voluntary manslaughter as a "defense" rather than as an "offense"), making it clear that evidence sufficient to support a murder conviction will not automatically be sufficient to support conviction for voluntary manslaughter. The issue of sudden passion must be raised by the evidence.

I agree that the present statutory scheme occasionally places this Court and the courts of appeals in "the ludicrous position of acquitting a defendant when there is sufficient evidence in the record that he is guilty of murder." *Daniel v. State*, supra, at 398 (Miller, J., concurring). That the Legislature could improve upon it is clear. See *Bradley*, supra, at 853, n. 13; *Gold*, supra, at 686, n. 1. But to say that *Bradley* (really *Braudrick*) was an "unnecessary" "manipulation" of the statutory

scheme is, it seems to me, to fail to appreciate the nature of the problem. By needlessly inviting future attack on the present state of the caselaw, the majority only threatens to further "muddle" the situation.

Therefore, I concur only in the judgment of the Court. I cannot join its opinion.

OVERSTREET, Judge, concurring on appellant's petition for discretionary review.

Appellant's ground for review no. 1 deals with what kind of notice is required to inform an accused that the State intends to seek a deadly weapon finding. The answer I believe is simple. Relying in part on *Ex parte Patterson*, 740 S.W.2d 766 (Tex.Cr. App.1987), I would say that the State should be required to add the simple language of "The State intends to seek an affirmative finding of the use of a deadly weapon," either in the indictment or in a separate instrument filed with the court at the time the indictment is presented or at anytime prior to trial in order that the accused has adequate notice. With the above, I concur only in the judgment of the Court. I cannot join its opinion.