Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio





## MEMORANDUM OPINION

No. 04-09-00378-CR

Oscar **DELGADO**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the County Court, Jim Wells County, Texas
Trial Court No. 40554
The Honorable Jim Huff, Judge Presiding

Opinion by:    Rebecca Simmons, Justice

Sitting:        Catherine Stone, Chief Justice
                Karen Angelini, Justice
                Rebecca Simmons, Justice

Delivered and Filed:  August 18, 2010

AFFIRMED

Appellant Oscar Delgado was found guilty of a class A misdemeanor assault with bodily injury of Frank Villagran following a fight outside of a middle school. On appeal, Oscar[1] argues (1) the evidence was legally and factually insufficient to support the jury's verdict; (2) the trial court erred by denying the jury instructions on consent and defense of a third party; (3) the trial court erred in denying appellant's requested mistrial after the prosecution made an allegedly

---

[1] Due to the appellant and several witnesses having the same surname, we refer to these parties by their first names for the sake of clarity.

improper comment; and (4) the trial court erred in refusing to grant his motion for new trial due to an outside communication with a juror.

## BACKGROUND AND FACTS

The evidence is undisputed that Villagran, who was seventeen years of age at the time of the incident, and Oscar's grandson, fifteen year-old Christian Delgado, agreed to meet outside of a middle school to fight. Recent tension between the two boys escalated because of a girl with whom they were both mutually acquainted. Villagran arrived at the middle school around 7:45 p.m. with his sixteen year-old half-brother, Aaron Vela, and Christian arrived shortly after with his father, Daniel. Oscar, Christian's grandfather, and other family members and friends were also present for the altercation.

Villagran and Christian approached each other and a fist-fight ensued. According to various witnesses, the boys would back off a little bit and then resume the fight. Eventually, Villagran testified that Oscar stepped in and pulled Villagran off Christian and then told the boys to resume their fight. Villagran also related that Oscar pulled him off Christian a second time, but this time allowed Christian to take a free shot at Villagran while he was held back by Oscar.

The fight continued, but Oscar eventually stopped the fight by separating the boys, and told them it was over and that the boys should "become friends." Villagran testified that he believed it was over and began looking for his phone when Oscar hit Villagran on the cheek with his fist. According to Villagran, he fell and Oscar and Daniel hit him several more times. Villagran also claimed he saw Daniel kicking Vela while Vela was on the ground fighting Christian. When Villagran went to help Vela he was again hit from behind by Oscar. Villagran claimed he managed to get away from Oscar, while Vela crawled away from Daniel and Christian. Oscar, Daniel, and Christian then left the scene and Villagran and Vela walked home.

Villagran's parents called the police and an ambulance. Villagran's mother, Flor Salinas, described him as "light-headed" and not "even thinking straight." Salinas also claimed Villagran "passed out." Villagran was transported by ambulance to the hospital suffering damages to his cheekbone, nose, and sinus area.

Oscar was charged with assault bodily injury and was found guilty of the offense after a three-day jury trial. Oscar was subsequently sentenced to 365 days in county jail; the sentence was suspended and probated for two years. Additionally, the trial court imposed thirty days in jail as a condition of probation. Oscar's motion for new trial was denied by the trial court.

## LEGAL AND FACTUAL SUFFICIENCY

In his first issue on appeal, Oscar claims the evidence presented to the jury was legally and factually insufficient to find him guilty beyond a reasonable doubt.

### A. Standard of Review

When an appellant challenges the legal sufficiency of the evidence supporting his conviction, the appellate court examines "the evidence in the light most favorable to the prosecution" and determines whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *accord Sells v. State*, 121 S.W.3d 748, 753–54 (Tex. Crim. App. 2003) (en banc). We do not "substitute our judgment for that of the [jury]." *Hardy v. State*, 246 S.W.3d 290, 295 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd) (citing *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999) (en banc)). "The jury is the exclusive judge of the credibility of witnesses and of the weight to be given testimony, and it is also the exclusive province of the jury to reconcile conflicts in the evidence." *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000) (en banc); *accord* TEX. CODE CRIM. PROC. ANN. art. 38.04 (Vernon 1979). Furthermore, we resolve

any inconsistencies in witness testimony in favor of the verdict. *Johnson v. State*, 815 S.W.2d 707, 712 (Tex. Crim. App. 1991) (en banc).

For a factual sufficiency review, an appellate court examines the evidence in a neutral light. *Watson v. State*, 204 S.W.3d 404, 415 (Tex. Crim. App. 2006). We "employ appropriate deference to . . . the fact finder's role as the sole judge of the weight and credibility given to witness testimony," but we do not make inferences in favor of, nor ignore evidence conflicting with, the verdict. *Johnson v. State*, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000) (en banc). In fact, the appellate court may "disagree with the fact finder's determination," *id.*, at 9, but may set aside the judgment only if (1) the evidence is "so weak that the jury's verdict seems clearly wrong and manifestly unjust," or (2) the verdict is "against the great weight and preponderance of the evidence." *Watson*, 204 S.W.3d at 414–15 (internal quotation marks omitted).

## B. Assault Bodily Injury

Section 22.01 of the Texas Penal Code provides that a person commits the offense of assault bodily injury if the person "intentionally, knowingly, or recklessly causes bodily injury to another. . . ." TEX. PENAL CODE ANN. § 22.01(a)(1) (Vernon Supp. 2009). Bodily injury is defined as "physical pain, illness, or any impairment of physical condition." TEX. PENAL CODE ANN. § 1.07(a)(8) (Vernon Supp. 2009). "Bodily injury" is defined very broadly and "seems to encompass even relatively minor physical contacts so long as they constitute more than mere offensive touching." *Lane v. State*, 763 S.W.2d 785, 786 (Tex. Crim. App. 1989) (noting that no visible injuries on the body need appear to constitute bodily injury).

**C. Analysis**

*1. Legal Sufficiency*

Villagran testified that Oscar hit him in the face when he reached down to find his phone, and hit him again after he fell down. Furthermore, Villagran testified to the pain he suffered and the damaging injuries to his face and nasal passages caused by Oscar's closed-fist strikes. Villagran also testified that his injuries were minimal from the fight with Christian, but that the first blow by Oscar was the most damaging. Thus, the testimony of Villagran alone is sufficient to prove he suffered bodily injury by Oscar. *See Botello v. State*, 693 S.W.2d 528, 530 (Tex. App.—Corpus Christi 1985, writ ref'd) (holding the victim's testimony was sufficient to prove bodily injury occurred to his hand). From this evidence, a rational trier of fact could logically and reasonably conclude that Villagran suffered assault bodily injury caused by Oscar. *See* TEX. PENAL CODE ANN. § 22.01(a)(1). Taking the evidence in a light most favorable to support the verdict of the jury, Villagran's testimony is legally sufficient to support the jury's verdict.[2] *See Jackson*, 443 U.S. at 319.

*2. Factual Sufficiency*

With regard to his factual sufficiency claim, Oscar argues Villagran's testimony conflicts with the evidence presented by several witnesses. Christian testified that he is a Golden Gloves boxer who is more than capable of causing all of Villagran's injuries. Christian stated that he also "kneed" Villagran in his face, but at no time did he see Oscar hit Villagran. Additionally, Christian's mother, Laura Benavides, as well as Reynaldo Ramirez and Joshua Rios, testified that they never saw Oscar strike Villagran.

---

[2] The State argues Oscar did not adequately brief the legal sufficiency argument. However, an appellate court liberally construes appellate briefs because they "are meant to acquaint the court with the issues in a case and to present argument that will enable the court to decide the case, [so] substantial compliance with this rule is sufficient. . . ." TEX. R. APP. P. 38.9. Thus, we conclude Oscar properly preserved his legal sufficiency argument.

However, the statements by the alleged eyewitnesses are also inconsistent. Oscar, Christian, Benavides, and Villagran all testified that they arrived at the school between 7:45 p.m. and 8:00 p.m. However, Reynaldo Ramirez that testified he witnessed the fight in broad daylight, about 4:00 or 5:00 p.m. He also testified that he knew Oscar prior to the incident, and although he read about the incident in the newspaper, he chose not to say anything to police until shortly before the trial. Joshua Rios also testified the fight took place sometime around 5:00 or 6:00 p.m. Thus, the jury could reasonably choose to disbelieve the testimony of these defense witnesses because their testimony is inconsistent with the testimony of the participants in the fight.

Oscar also asserts that no physical evidence supports the State's position. Specifically, the investigating officer, Antonio Aguilar, testified that he expected to see some visible evidence of an assault on a suspect's hands, but he did not observe any physical markings on Oscar's hands. However, even in the face of conflicting evidence, an appellate court defers to a jury's determination of witness credibility. *Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008). Oscar argues Villagran's inconsistent testimony regarding whether he was held back by Daniel or by Oscar so that Christian could get a free punch, is tenuous, and is consistent with Oscar's claim that he inflicted no injuries on Villagran. The jury, however, was at liberty to determine what weight to place on these inconsistent statements and whether to believe any hearsay evidence that was presented. *Id.* at 706–07.

Reviewing all of the evidence in a neutral light, a jury could reasonably conclude that Oscar caused the bodily injury to Villagran. *See id.* at 705. The jury could rationally believe the testimony of Villagran and discredit the conflicting testimony of the defense witnesses. *See id.* at 706–07. Thus, we cannot say the evidence is "so weak that the jury's verdict seems clearly

wrong and manifestly unjust" or "against the great weight and preponderance of the evidence." *Watson*, 204 S.W.3d at 414–415 (internal quotation marks omitted). We therefore conclude the evidence is factually sufficient to support the jury's determination that Oscar assaulted Villagran and caused bodily injury. Accordingly, we overrule Oscar's legal and factual sufficiency claims on appeal.

## JURY INSTRUCTION

In his second issue on appeal, Oscar argues the trial court erred by failing to instruct the jury on affirmative defenses. Specifically, Oscar objected to the trial court's failure to include jury instructions for consent and defense of third parties.

### A. Standard of Review

A trial court must give "such instructions and definitions as shall be proper to enable the jury to render a verdict." TEX. R. CIV. P. 277. A jury instruction is proper if it assists the jury and correctly states the law, and if the pleadings and evidence support the instruction. *Columbia Rio Grande Healthcare, L.P. v. Hawley*, 284 S.W.3d 851, 855 (Tex. 2009) (citing *Tex. Workers' Comp. Ins. Fund v. Mandlbauer*, 34 S.W.3d 909, 912 (Tex. 2000)). An appellate court reviews the discretion of the trial court in its determination of "necessary and proper jury instructions." *Hawley*, 284 S.W.3d at 856.

In order to include a defensive jury instruction, the trial court must determine whether "evidence [was] admitted supporting the defense." TEX. PENAL CODE ANN. § 2.03(c) (Vernon 2009). Implicit in this determination is that the defensive request is allowed only when the evidence is "such that it will support a rational jury finding as to each element of the defense." *Shaw v. State*, 243 S.W.3d 647, 657–58 (Tex. Crim. App. 2007). In the absence of evidence to

support the instruction, a trial court is not required to instruct the jury on a defensive charge. *See McCray v. State*, 861 S.W.2d 405, 408 (Tex. App.—Dallas 1993, no writ).

## B. Analysis

### 1. Consent

Oscar relies on section 22.06 of the Texas Penal Code to argue the trial court abused its discretion in failing to include a jury instruction on consent. TEX. PENAL CODE ANN. § 22.06(a) (Vernon Supp. 2009). Section 22.06 provides, "The victim's effective consent or the actor's reasonable belief that the victim consented to the actor's conduct is a defense to prosecution . . . ." *Id.* Oscar claims Villagran consented to a fight with Oscar because Villagran saw Oscar at the fight location and proceeded to fight, thus leading Oscar to believe Villagran consented to fight not only Christian, but also Oscar. Yet, Oscar's requested instruction contradicts the defense he asserted at trial. Oscar never admitted to anything more than placing his hand on Villagran's chest. In fact, the State, during the objections to the jury charge, commented on its concern that the defense never admitted to a fight between Oscar and Villagran so as to raise a justification defense.

At trial, Oscar did not admit to hitting or punching Villagran and causing the bodily injuries. To the contrary, the only conduct he acknowledged was simply holding Villagran back from hitting Christian. A justification defense may be raised when a defendant basically admits to violating the statute with which he is charged and then offers a justification so as to relieve him or her from criminal liability. *See Shaw*, 243 S.W.3d at 659 (quoting *Young v. State*, 991 S.W.2d 835, 838 (Tex. Crim. App. 1999) (determining a necessity defense was allowed when "'a defendant admits violating the statute under which he is charged and then offers necessity as a justification which weighs against imposing a criminal punishment for the act or acts which

violated the statute'")). In *Shaw v. State*, a defendant, convicted of recklessly causing bodily injury to a child, appealed the conviction claiming she was entitled to a jury charge on the Good Samaritan defense. *Id.* at 648. In that case, the defendant was accused of shaking a baby causing serious bodily injury; however, the defendant never admitted to causing the injury necessary to support a Good Samaritan defense. *Id.* at 659. "'[A] justification defense is one that defines *conduct otherwise criminal*, which under the circumstances is socially acceptable and which deserves neither criminal liability nor even censure.'" *Id.* at 659 n.27 (alteration in original) (quoting W. LAFAVE, SUBSTANTIVE CRIMINAL LAW § 9.1(a)(3), at 7 (2d ed. 2003). The *Shaw* court held that a justification must do more than simply negate an element of the offense: it must also excuse what would otherwise be considered criminal conduct. *Id.* at 659. As in *Shaw*, Oscar did not adequately "explain to the trial court how the evidence at trial supported the requested special charge." *Id*. at 655. Here, Oscar never admitted to the offense, and as such, he was not entitled to an instruction for the justification defense of consent.

### 2. *Defense of Third Party*

Oscar also argues, based on section 9.33 of the Texas Penal Code, the trial court erred in refusing his requested defensive instruction that he used force to protect a third person, Christian. *See* TEX. PENAL CODE ANN. § 9.33 (Vernon Supp. 2009) (providing that a person may use force when "the actor reasonably believes that his intervention is immediately necessary to protect the third person."). Oscar argues that his videotaped statement, wherein he admitted putting his hand on Villagran's chest to prevent him from fighting with Christian, provides the required evidence necessary for the instruction. Importantly, however, this act alone does not amount to the level of bodily injury suffered by Villagran, and like the consent argument, a defensive instruction is appropriate "only if the jury could have found that it was this particular act that

actually caused the . . . injury." *See Shaw*, 243 S.W.3d at 660. While a defendant is not required to admit using force against another, or even to testify, a defense of third party instruction is not appropriate when a defendant does not, at the very least, admit to conduct similar to that charged. *See McGarity v. State*, 5 S.W.3d 223, 227 (Tex. App.—San Antonio 1999, no pet.) (determining that a defensive instruction is not necessary when a defendant does not admit to alleged conduct).

No defense witness testified to the requisite conduct necessary to support a defense of third party jury instruction. To the contrary, Oscar[3] and Christian both maintain that all of Villagran's injuries were caused by Christian. "In order to raise this defense . . . the defendant must admit he committed the charged offense and then offer defense of a third person as a justification for his otherwise criminal conduct." *In re M.C.*, 237 S.W.3d 923, 927 (Tex. App.—Dallas 2007, no pet.). Because no evidence existed to support the defense, the trial court did not abuse its discretion in refusing to include the instruction on defense of third parties. *See* TEX. PENAL CODE ANN. § 2.03(c).

COMMENT ON APPELLANT'S FAILURE TO TESTIFY

In his next issue on appeal, Oscar contends the trial court erred by denying his request for a mistrial after the prosecution commented on Oscar's failure to testify. Oscar claims his right to silence under the Fifth Amendment of the United States Constitution, section 10 of the Texas Constitution, and article 38.08 of the Texas Code of Criminal Procedure was violated. *See* U.S. CONST. amend. V; TEX. CONST. art. 1, § 10; TEX. CODE CRIM. PRO. ANN. art. 38.08 (Vernon Supp. 2009).

## A. Standard of Review

---

[3] Oscar's statements came from his videotaped interview with Officer Antonio Aguilar played during the trial in which he stated "I did not hit the young man. I did nothing."

An appellate court reviews a trial court's denial of a motion for mistrial under an abuse of discretion standard. *Simpson v. State*, 119 S.W.3d 262, 272 (Tex. Crim. App. 2003). A mistrial is appropriate "if an impartial verdict cannot be reached, or if a verdict of conviction could be reached but would have to be reversed on appeal due to an obvious procedural error." *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999) (citing *Sewell v. State*, 696 S.W.2d 559, 560 (Tex. Crim. App. 1983)).

"The failure of an accused to testify may not be commented upon by the judge or the prosecution because it offends the constitutional privilege against self-incrimination." *Martinez v. State*, 276 S.W.3d 75, 78 (Tex. App.—San Antonio 2008, pet. ref'd). Usually, any potential harm caused by a comment regarding a defendant's failure to testify is remedied by an instruction to disregard. *Moore v. State*, 999 S.W.2d 385, 405–06 (Tex. Crim. App. 1999). An appellate court considers the facts and circumstances of the case in determining whether the trial court's instruction cured the reference to the defendant's failure to testify. *See Hernandez v. State*, 805 S.W.2d 409, 413–14 (Tex. Crim. App. 1990). Additionally, the comment must be viewed from the jury's perspective to determine if the comment can be construed as a defendant's failure to testify. *Wead v. State*, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004). Furthermore, the appellate court must determine if the language was used intentionally in order to direct the jury's attention towards the defendant's failure to testify; indirect or implied statements are not enough. *Martinez*, 276 S.W.3d at 78–79 (citing *Bustamante v. State*, 48 S.W.3d 761, 764 (Tex. Crim. App. 2001)).

## B. Analysis

The prosecutor's comment arose in response to an objection by the defense. Specifically, during direct examination, the prosecution asked the investigating officer Antonio Aguilar to

relay what the defendant told him during his initial interview. The defense lodged a hearsay objection and suggested Oscar's videotaped interview was the best evidence. The prosecution argued Rule 801(e) allowed a statement by the accused as an admission in criminal cases. TEX. R. EVID. 801(e). The defense again urged that the videotaped statement was the best record of what was said, to which the following transpired:

> **Prosecutor**: Your Honor, in this case, if [defense counsel] wants the statement, then the best person who can give the statement is Mr. Delgado.
>
> **Defense Counsel**: Your Honor, I would move for a mistrial. That is completely inappropriate. To even—and I'm going to put it down to inexperience more than maliciousness, but I would have to move for a mistrial at this time, Your Honor. [4]

The trial court dismissed the jury and further argument by counsel continued off the record. After the jury returned, the trial court gave the following instruction to disregard the prosecutor's comment:

> Ladies and gentlemen of the Jury, just before you recessed, there was a remark that I'm going to direct that you disregard. As you know and as I told you earlier, a Defendant's failure to testify cannot in any form or fashion be held against them. I don't want that to in any way change your thinking. The remark that was made alluding to failure to testify is not appropriate, so disregard the last remark. . . .

Oscar contends the prosecutor's comment was specifically and intentionally directed at calling the defendant's failure to testify to the attention of the jury, resulting in a violation of his constitutional rights. However, when viewed in context, the comment appears directed by the prosecutor as "a shorthand way . . . [to] circumvent the hearsay problem" raised by the videotaped testimony of appellant, and not as an intentional remark to the jury on the defendant's failure to testify. *U.S. v. Hubbard*, 61 F.3d 1261, 1268–69 (7th Cir. 1995), *cert. denied*, 516 U.S.

---

[4] The State argues defense waived this issue on appeal because defense counsel did not secure a ruling on the initial motion for mistrial after the statement was made. However, defense counsel's second motion for mistrial, based on the improper statement, and the court's subsequent negative ruling, adequately preserved the complaint for appellate review. *See* TEX. R. APP. P. 33.1.

1175 (1996) (concluding that the government's comment regarding defendant's failure to testify was directed at curing hearsay problems with testimony was harmless with regard to defendants privilege against self-incrimination). Likewise, defense counsel's statement immediately after the comment that he would "put it down to inexperience more than maliciousness" indicates even defense counsel did not believe the prosecution's comment was made intentionally. The record simply does not support that the comment was an intentional remark about the defendant's failure to testify. *See Wead*, 129 S.W.3d at 130.

Furthermore, the comment is not of the character that a jury might interpret as raising the defendant's failure to testify. *See id.* (citing *Bustamante*, 48 S.W.3d at 765). A typical jury would not "naturally and necessarily take it as a comment on the [defendant]'s election not to testify." *Id.* As such, the comment did not likely cause the jury to make an inference about Oscar's silence in not testifying at the trial. *See Hubbard*, 61 F.3d at 1268. Regardless, any potential harm was cured by the trial court's prompt instruction to disregard the prosecutor's comment. *Gardner v. State*, 730 S.W.2d 675, 700 n.13 (Tex. Crim. App. 1987). Because the comment of the prosecutor was not "so blatant that it rendered an instruction to disregard ineffective," the trial court did not abuse its discretion in denying the motion for mistrial. *Moore*, 999 S.W.2d at 406.

### JUROR COMMUNICATION

In his last issue on appeal, Oscar contends the trial court erred by not granting the motion for new trial after an alternate juror, Leonel Rodriguez, testified that he overheard the bailiff, Jesus Salinas Jr., and a juror, Alfonso Navarro, discuss the trial outside of the presence and permission of the court while the trial was still ongoing. *See* TEX. CODE CRIM. PRO. ANN. art. 36.22 (Vernon Supp. 2009). Oscar claims this violated article 36.22 of the Texas Code of

Criminal Procedure, which reads: "No person shall be permitted to be with a jury while it is deliberating. No person shall be permitted to converse with a juror about the case on trial except in the presence and by the permission of the court." *Id.*

## A.  Standard of Review

Issues of juror misconduct are reviewed by an appellate court using an abuse of discretion standard. *Quinn v. State*, 958 S.W.2d 395, 400 (Tex. Crim. App. 1997) (en banc). The trial court's denial of a new trial should be upheld "if it was within the zone of reasonable disagreement." *Garcia v. State*, 246 S.W.3d 121, 134 (Tex. App.—San Antonio 2007, pet. ref'd). Furthermore, if a violation of article 36.22 of the Texas Code of Criminal Procedure is determined to exist, then a rebuttable presumption of harm to the accused is supposed. *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009). The State may then rebut the presumption of harm. *See id.* However, to determine if the State sufficiently rebutted the presumption, the appellate court views the evidence in a light most favorable "to the trial court's resolution of historical facts and its determinations concerning credibility and demeanor." *Id.*

> It is well established that issues of fact as to jury misconduct raised at a hearing on [a] motion for new trial are for the determination of the trial judge, and where there is conflicting evidence there is no abuse of discretion where the motion for new trial is overruled.

*Sneed v. State*, 670 S.W.2d 262, 266 (Tex. Crim. App. 1984) (en banc) (citing *McCartney v. State*, 542 S.W.2d 156, 162 (Tex. Crim. App. 1976)).

## B.  Analysis

Rodriguez testified at the hearing on the motion for new trial that he heard Salinas tell Navarro, in the presence of other jurors, "Guilty, huh?" The comment was phrased as a question, to which Rodriguez testified that Navarro "kind of shrugged" in response. During the motion for new trial, Navarro and Salinas both testified that they knew each other outside of the trial and

acknowledged they had at least one conversation between them while the trial was ongoing, but that their conversation was never about the trial. Both were adamant that the alleged conversation regarding the trial never transpired.

While Rodriguez testified that he overheard the improper conversation between Salinas and Navarro, both Salinas and Navarro denied ever having the improper conversation. When a juror's testimony conflicts with another juror's testimony, the trial judge is free to believe one juror's testimony as to the absence of improper conduct and to disbelieve and reject all or part of the testimony of the other jurors. *McCartney*, 542 S.W.2d at 162. The trial court was the trier of the facts on the motion for new trial and, as such, could choose to believe the testimony of one juror over another regarding the conversation between Salinas and Navarro. *Id.* Furthermore, resolving credibility and demeanor of testimony is within the province of the trial court as a fact-finder. *Quinn*, 958 S.W.2d at 402. Because almost complete deference is given to the trial court's resolution of the facts, we cannot conclude the trial court abused its discretion in denying Oscar's motion for new trial. *See id.* (determining "'almost total deference'" is given to a trial court's resolution of credibility and demeanor issues). Accordingly, Oscar's last issue on appeal is denied.

## CONCLUSION

The evidence presented at Oscar's trial is both legally and factually sufficient to support the guilty verdict by the jury. Although there were conflicts in the witnesses' testimony, a jury could reasonably conclude Oscar caused Villagran's bodily injuries. Additionally, the trial court did not abuse its discretion by denying jury instructions on defense of third parties and on consent because no witness testified to the requisite conduct. Furthermore, the record shows the trial court did not abuse its discretion by denying Oscar's motion for mistrial because any

comment made by the prosecution inferring Oscar's failure to testify was cured by an instruction to disregard. Lastly, the trial court properly denied the motion for new trial because both the alleged juror and bailiff denied any misconduct. Accordingly, we affirm the judgment of the trial court.

Rebecca Simmons, Justice

DO NOT PUBLISH