Juan GARZA, Appellant,

v.

The STATE of Texas, Appellee.

No. 13–92–677–CR.

Court of Appeals of Texas,
Corpus Christi.

April 21, 1994.

Rehearing Overruled May 19, 1994.

Discretionary Review Refused
Aug. 17, 1994.

Hector Villarreal, Edinburg, for appellant.

Rene Guerra, Dist. Atty., Theodore C. Hake, Cynthia A. Morales, Asst. Dist. Attys., Edinburg, for appellee.

Before SEERDEN, GILBERTO HINOJOSA and FEDERICO G. HINOJOSA, Jr., JJ.

## OPINION

FEDERICO G. HINOJOSA, Jr., Justice.

A jury found appellant guilty of murder and assessed punishment at life imprisonment. By two points of error, appellant complains that the trial court erred by failing to grant his motion for instructed verdict and by denying his motion for mistrial after the prosecutor commented on his failure to make a voluntary statement. We affirm.

On September 14, 1990, Fidela "Machie" Medina celebrated her birthday by holding a party at her home in Pharr. Eva Garza, appellant's estranged wife and Medina's friend and co-worker, arrived at the party at approximately 7:00 p.m.

The evening was hot. Several people were in the living room and the rest were in a back room that was air-conditioned. Eva talked with Juan Flores until someone said that the party needed more ice. Eva and Flores then went to Flores' place of employment to get ice. When they returned, they sat in the living room and continued talking. Appellant then arrived.

Guadalupe Longoria testified that as he was leaving the party, he saw appellant enter the house. Appellant asked him, "Is Eva here?" Longoria replied that he did not know Eva, but that she "might be inside." Longoria then went to the car and waited for his girlfriend.

Eva was talking with Flores when appellant entered the living room. Appellant walked towards her, hit her, and knocked her unconscious. When she came to, Eva saw appellant stab Flores several times.

Randy Burnett was coming out of the air-conditioned back room when he saw appellant holding Flores down and stabbing him with a knife which he held in his right hand. Appellant said nothing before attacking Eva

and said nothing while he was stabbing Flores. Burnett pulled appellant away from Flores and held onto appellant's arm until he dropped the knife. Eva and Flores then fled from the house. Roy Palacios, Fidela's brother, struggled with appellant and then let him go. Appellant then left the house.

Eva and Flores ran for one-half block until Flores collapsed on the steps of a nearby house. Appellant left Medina's house, walked towards Eva's car, and kicked it. He was heard saying, "It's your fault, Machie", and "That's what happens to a whore." He then walked towards U.S. Highway 83.

Eva and Flores were taken by ambulance to the hospital. Eva suffered a deep cut to her face. Flores died as a result of multiple stab wounds to his head and arms.

Appellant was charged by indictment for the offense of murder.[1] The indictment states, in relevant part, that:

JUAN GARZA ... on or about the 14th day of September A.D., 1990, ... in Hidalgo County, Texas, did then and there intentionally and knowingly cause the death of an individual, Juan Flores, by stabbing him with a deadly weapon, to-wit: a knife, that in the manner of its use and intended use was capable of causing death and serious bodily injury.

At trial, appellant pleaded guilty to voluntary manslaughter, but pleaded not guilty to murder. The court charged the jury on the offenses of both murder and voluntary manslaughter.[2] The jury found appellant guilty of murder.

By his first point of error, appellant complains that the trial court erred by failing to grant his motion for an instructed verdict of acquittal to the charge of murder.

Attacks on a trial court's denial of a motion for instructed verdict are attacks on the legal sufficiency of the evidence. *Madden v. State*, 799 S.W.2d 683, 686 (Tex.Crim. App.1990). When we review the sufficiency

of the evidence, we must determine whether, considering the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Butler v. State*, 769 S.W.2d 234, 237 (Tex.Crim. App.1989); *Moreno v. State*, 755 S.W.2d 866, 867 (Tex.Crim.App.1988).

"It is not the reviewing court's duty to disregard, realign or weigh evidence." *Moreno*, 755 S.W.2d at 867. It is the jury, as the trier of fact, and not this court, that must resolve any conflicts in the evidence and weigh the credibility of witnesses. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex.Crim.App. 1986), *cert. denied*, 488 U.S. 872, 109 S.Ct. 190, 102 L.Ed.2d 159 (1988); *Moreno*, 755 S.W.2d at 867; *Penagraph v. State*, 623 S.W.2d 341, 343 (Tex.Crim.App. [Panel Op.] 1981). Any inconsistencies in the testimony are resolved in favor of the verdict. *Moreno*, 755 S.W.2d at 867.

Appellant contends that once he pleaded guilty to voluntary manslaughter, the issue of "immediate influence of sudden passion arising from an adequate cause"[3] was raised, thereby requiring the State, in seeking a murder conviction, to disprove sudden passion beyond a reasonable doubt. Alternatively, appellant contends that evidence adduced at trial adequately raised the issue of sudden passion and that the State failed to disprove such influence beyond a reasonable doubt. Appellant contends that he is entitled to an acquittal on the murder charge since the State failed to meet its burden.

Appellant cites no authority to support his proposition that a plea of guilty to voluntary manslaughter requires the State to disprove sudden passion beyond a reasonable doubt. Our research has found no cases supporting appellant's proposition. To so hold would circumvent the requirement that

---

1. Tex. Penal Code Ann. § 19.02(a)(1) (Vernon 1989).

2. Tex. Penal Code Ann. § 19.04 (Vernon 1989).

3. Tex. Penal Code Ann. § 19.04(a) states:

(a) A person commits an offense if he causes the death of an individual under circumstances that would constitute murder under Section 19.02 of this code, except that he caused the death under the immediate influence of sudden passion arising from an adequate cause.

the *evidence* raise the issue of sudden passion before the State is required to prove its absence as an "implied" element of murder. *See Bradley v. State,* 688 S.W.2d 847, 851 (Tex.Crim.App.1985); *Braudrick v. State,* 572 S.W.2d 709, 710 (Tex.Crim.App.1978), *cert. denied,* 440 U.S. 923, 99 S.Ct. 1252, 59 L.Ed.2d 477 (1979).

■■■ Appellant's argument appears to be based on the faulty premise that a plea of guilty constitutes evidence. It is an accepted principle that a plea of guilty is not evidence. Under Texas law, a plea of guilty to a felony charge before a jury amounts to an admission of all facts necessary to establish guilt, and any introduction of evidence by the State is made to enable the jury to assess punishment. *Darden v. State,* 430 S.W.2d 494, 495 (Tex.Crim.App.1968); TEX.CODE CRIM.PROC. ANN. art. 26.14 (Vernon 1989). *Cf.* TEX.CRIM. PROC.CODE ANN. art. 1.15 (Vernon Supp.1994) (State must offer evidence to prove guilt where defendant pleads guilty and waives trial by jury). Thus, a plea of "guilty" to an indictment amounts to nothing more than an acknowledgment of the facts charged; whether such facts constitute an offense is left to the court. *Crow v. State,* 6 Tex. 334 (1851).

■■■ In the instant case, the indictment did not charge appellant with the offense of voluntary manslaughter, and the record reflects no plea bargain between appellant and the State. Appellant entered the plea of guilty of his own volition and at his own expense.[4] Since appellant was indicted only for the offense of murder, a guilty plea to voluntary manslaughter was insufficient to raise the issue of sudden passion.

■■■ Appellant misinterprets the applicability of the Texas Court of Criminal Appeals' ruling in *Humphries v. State*[5] and *Braudrick v. State.*[6] Both cases involve a factual sufficiency challenge to the submission of a voluntary manslaughter charge, where the accused was indicted for murder.

The issue in both cases was whether the evidence raised the issue of sudden passion to support the charge given by the court on voluntary manslaughter. The Court of Criminal Appeals held that:

> causing the death "under the immediate influence of sudden passion arising from an adequate cause" is in the nature of a defense to murder that reduces that offense to the lesser included offense of voluntary manslaughter, and that the State need not prove such influence beyond a reasonable doubt to establish voluntary manslaughter, but that if raised by the evidence it must prove the absence of such influence beyond a reasonable doubt to establish murder.

*Humphries,* 615 S.W.2d at 738 (*quoting Braudrick,* 572 S.W.2d at 711). The Court of Criminal Appeals has since attempted to clarify the "already convoluted area of the law" as it has evolved within the last decade. *See generally Johnson v. State,* 815 S.W.2d 707, 710 n. 3 (Tex.Crim.App.1991) (acknowledging *Bradley* manipulation of murder statute unnecessary); *Gold v. State,* 736 S.W.2d 685, 686 n. 1 (Tex.Crim.App.1987) (petition granted to clarify standard for appellate review of sufficiency); *Bradley v. State,* 688 S.W.2d at 850 n. 3 (disapproving *Braudrick's* analysis of sudden passion as murder defense). "Sudden passion" is not a defense or in the nature of a defense to murder. Rather, when murder is charged but the evidence raises sudden passion, the negation of sudden passion becomes an "implied element" of murder. *Johnson,* 815 S.W.2d at 710.

Appellant argues that the evidence raised the issue of sudden passion. We need not determine whether the issue was raised, but whether the State, in seeking to prove murder, presented evidence from which the jury could find the absence of sudden passion beyond a reasonable doubt. The trial court found that the evidence sufficiently raised the issue of sudden passion and submitted the voluntary manslaughter charge to the

---

4. An accused has no constitutional right to have a plea of guilt accepted by the trial court. *North Carolina v. Alford,* 400 U.S. 25, 38 n. 11, 91 S.Ct. 160, 168 n. 11, 27 L.Ed.2d 162 (1970); *Thornton v. State,* 601 S.W.2d 340 (Tex.Crim.App. [Panel Op.] 1980) (opinion on rehearing).

5. 615 S.W.2d 737 (Tex.Crim.App.1981).

6. 572 S.W.2d 709 (Tex.Crim.App.1985).

jury for determination. The State's objection to the charge was overruled, and appellant's acquiescence to the charge is more than evident.

Here and at trial, appellant contends that the evidence of sudden passion was not refuted beyond a reasonable doubt. Appellant's point of error amounts to a factual sufficiency challenge to the jury's finding of murder *instead* of voluntary manslaughter.[7]

We need not decide whether voluntary manslaughter may constitute a lesser included offense to murder in this case, or whether there was sufficient evidence to support the charge given by the court on voluntary manslaughter. *Compare Bradley v. State,* 688 S.W.2d at 850–51 *with Williams v. State,* 768 S.W.2d 337, 339 (Tex.App.—Houston [14th Dist.] 1989, pet. ref'd). Thus, the issues are 1) whether the evidence was sufficient to establish murder, and 2) whether the evidence was sufficient to disprove sudden passion. *Johnson,* 815 S.W.2d at 711.

█ A jury may find 1) that there was no provocation, or at least none occurring at the time of the offense, whereupon a finding of no adequate cause would result, 2) that there was provocative conduct, even adequate to render an ordinary man incapable of cool reflection, but, nonetheless, that the accused acted coolly and deliberately, or 3) that there was provocative conduct and that the accused was in fact provoked, but that the provocation was not such as would render a man of ordinary temper incapable of cool reflection. *Id.; Gold,* 736 S.W.2d at 690 n. 3. A jury is, therefore, entitled to reject sudden passion even though it was raised by the evidence.

A jury may not, however, find facts necessary to establish the absence of sudden passion "purely on the basis of its disbelief of the accused's contrary assertions"; the State bears the burden of presenting the factfinder with sufficient evidence to negate any claim of sudden passion beyond a reasonable doubt.

*Johnson,* 815 S.W.2d at 711 (citing *Gold,* 736 S.W.2d at 689).

After viewing all the evidence in the light most favorable to the verdict, we find sufficient evidence from which a rational trier of fact could find the elements of murder as well as the implied element of the absence of sudden passion arising from an adequate cause beyond a reasonable doubt.

█ At trial, appellant attempted to establish the existence of sudden passion and adequate cause through the testimony of Eva Garza. Eva was married to, but separated from, appellant on the evening in question as well as on the day of trial. Eva and appellant were subsequently divorced. On cross-examination, Eva testified that she had not invited appellant to the party, that appellant had no way of knowing that Flores would be at the party, and that appellant had no reason to expect that he would find her there with Flores. On re-cross, she testified as follows:

Q: What were you wearing the night of the party, Ms. Garza?

A: A red blouse, long shorts that touched my knee.

Q: When you say long shorts, you mean like down to your knees or like long past your knees?

A: Only to the knee.

Q: And when you sat down your shorts rolled up, didn't they?

A: Above the knee.

Q: And when your husband walked into that living room you were seated immediately next to Mr. Flores, were you not?

A: Yes.

Q: As a matter of fact, you were sitting much closer to Mr. Flores than you are now to the interpreter?

A: No.

Q: But you're pretty close, aren't you?

A: Just like we are now.

Q: You were close enough for him to have his hand on your leg, weren't you?

A: No.

der, but to convince the jury that he was only guilty of voluntary manslaughter.

Q: He had his hand on your leg when your husband walked into the room, didn't he, ma'am?

A: No.

Q: That was the first time in your whole life that Mr. Garza had ever caught you with another man, isn't that true?

A: That's right.

Q: And he got mad, didn't he?

A: Yes.

Q: And he reacted, didn't he?

A: Yes.

Q: And he lost his—he just lost his mind, didn't he?

A: No.

Q: Didn't he ask you where his children were?

A: No.

\* \* \* \* \* \*

Q: Would you agree with me when I say that this—that when this unfortunate thing happened your husband was in a rage?

A: Yes.

Q: And he was out of control?

A: Yes.

Q: Just like a madman?

A: Yes.

The record reflects that Eva and appellant had separated at least five times during their ten-year marriage, and that they had separated approximately two months before the evening in question. Eva acknowledged that appellant was a jealous man and that she had left him before because he had accused her of having an affair with his older brother. Appellant had strangled and hit her, and he had also threatened to kill her.

Eva lived in an apartment during the time she was separated from appellant. Appellant had found out where she lived and went to her apartment. Eva obtained a protective order, but appellant returned again approximately one week later.

Eva testified that her child had told appellant that she was Flores' girlfriend and that appellant had confronted her and asked her about her relationship with Flores. Appellant entered the apartment and, when she told him she was going to call her mother, he pulled the cord out of the telephone. She replaced it and called the police. Appellant was then arrested and taken to jail.

Dr. A.J. Alamia, a psychologist, testified that he had administered a standardized psychological exam (Minnesota Multiphasic Personality Inventory) to appellant while he was in custody. Dr. Alamia's testimony was apparently offered as evidence of immediate influence and sudden passion. Dr. Alamia opined that appellant showed some use of repression (a lack of an ability to adapt to his environment) and a low or poor tolerance for stress. Dr. Alamia testified as follows:

A: In other words, I'm not saying he's a child, I'm simply saying that we all learn to cope and adapt and adjust to our life situations differently and Mr. Garza, you know, has a tendency to perhaps, because of his low frustration tolerance, overreact. Just overreact, I guess is the best kind of term I can use to explain it.

Q: In a hypothetical situation where the circumstances are emotional, confrontational, would he be the kind of man that would blow up?

A: Yes, he would.

Q: Would he be susceptible to, let's say, rage?

A: I would say, yes.

Q: Could—would he have difficulty controlling that rage?

A: Probably, yes.

Q: All right. Would he be the kind of individual who would react to sudden passion?

A: He could be, yes, sir.

\* \* \* \* \* \*

Q: In a hypothetical situation, based on your findings and your examination, these scores—in a very confrontational, emotional situation, would Mr. Garza—let's say like, in his own mind seeing or thinking or feeling that his spouse was having some sort of relationship with another man, he, at the point of immediate confrontation, would he be capable of cool reflection?

A: I would think not, no, sir.

Q: You think he would, you know, react to the immediate influence of that sudden passion of a confrontation with his wife and a man who, maybe was having some sort of relationship with her, in his mind?

A: Yes.

 Although we need not address appellant's argument that the foregoing testimony raised the issue of immediate influence of sudden passion arising from adequate cause, we must still determine:

> whether the evidence in this case was such as to compel a rational jury either to find appellant did in fact act under the immediate influence of sudden passion arising from an adequate cause, or at least to harbor a reasonable doubt that he did not—in other words, whether the State satisfied its burden to prove the implied element of absence of sudden passion beyond a reasonable doubt.

*Gold,* 736 S.W.2d at 689. The State must carry its burden of production and persuasion as to that implied element. *Id.*

Initially, we note that the circumstances were not such that would evidence sufficient provocation to be deemed sudden passion. "Sudden passion" must be "directly caused by and arising out of provocation" by the deceased or another acting with the deceased "at the time of the offense." Tex. Penal Code Ann. § 19.04(b) (Vernon 1989). The State offered testimony of several witnesses who saw appellant arrive at the party, go immediately to the living room where he found his estranged wife, hit her, then start stabbing Flores with a knife. There is no evidence of anything else happening between the time appellant arrived at the party and the time he assaulted Eva and Flores to constitute immediate provocation.

Appellant argues that the evidence is sufficient to show cause for provocation. He says that Flores had his hand on Eva's leg and that Flores was sitting close to her when he found them conversing at the party. This evidence is not enough to show adequate cause.

Section 19.04(c) defines "adequate cause" as "cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection." Tex. Penal Code Ann. § 19.04(c) (Vernon 1989). No heated discussion took place to instigate the attack, and no resistance or other form of provocation was made by Eva or Flores. *Cf. Gold,* 736 S.W.2d at 688 (sufficient evidence of lack of sudden passion when defendant found wife in hotel with victim, engaged in heated discussion, and shot victim a second time in cool and calculated frame of mind).

Appellant had previously confronted Eva with his suspicion that she was having an affair with Flores. Eva had applied for and received a protective order from the court. Appellant was ordered to stay away from Eva. Their separation was the result of physical abuse and jealousy. *Cf. Johnson,* 815 S.W.2d at 712 (State offered evidence of history of abuse from which jury could find absence of sudden passion at time of offense).

We hold that there is sufficient evidence from which the jury could find that there was no passion directly caused by and arising out of provocation at the party by either Flores or Eva, or that such passion, if any, was the result of former provocation or premeditation. While former provocation along with a showing of a sufficiently agitated state of mind at the time of the killing may raise the issue, as the trial court evidently determined in this case, a jury could reject sudden passion even though it was raised by the evidence. *Gold,* 736 S.W.2d at 690.

Furthermore, even though Dr. Alamia's testimony shows that appellant has a low frustration level and might have overreacted to seeing his estranged wife at a party conversing with another man whom he "believed" to be her lover, it does not establish that appellant acted under such a degree of anger, rage, resentment, or terror that rendered his mind incapable of cool reflection.

After viewing all the evidence in the light most favorable to the verdict, we hold that the State satisfied its burden, and that a reasonable jury could have found the absence

of sudden passion arising from adequate cause beyond a reasonable doubt.

■ In addition, appellant has failed to show that the evidence in the record is insufficient to support a conviction for murder. There is no question that appellant killed Flores. The issue, both at trial and on appeal, is appellant's state of mind at the time of the killing.

After reviewing the record, we conclude that there is sufficient evidence from which the jury could find that appellant committed an act clearly dangerous to human life with intent to cause serious bodily injury, and that such act was committed not under the immediate influence of sudden passion arising from an adequate cause, beyond a reasonable doubt. Accordingly, we overrule appellant's first point of error.

■ By his second point of error, appellant complains that the trial court erred by denying his motion for mistrial when the State's prosecutor commented on his failure to make a voluntary statement, thus violating his constitutional right to remain silent.

Sgt. Ruben Villescas, a detective with the Pharr Police Department, testified during direct examination that he arrested appellant after he turned himself in at the Pharr Police Department. The prosecutor then asked him, "Did the defendant give any statements?" Sgt. Villescas replied, "No, sir." Appellant objected on Fifth Amendment grounds, and moved for a mistrial. The trial court sustained his objection, but denied the request for a mistrial. The trial court then instructed the jury to disregard the prosecutor's question.

The State contends that there is no evidence to show that the question was calculated to inflame the minds of the jury and that any error was cured by the subsequent instruction to disregard. Appellant did not testify, and the record does not reflect whether appellant received the Miranda[8] warnings.

■ Both the federal and state constitutions prohibit the use of post-arrest silence against an accused at trial. See U.S. Const.,

amend. V; Tex. Const. art. I, § 10. It is a well-established rule that an individual's post-arrest silence may not be used against him at trial. Doyle v. Ohio, 426 U.S. 610, 619, 96 S.Ct. 2240, 2245, 49 L.Ed.2d 91 (1976); Sanchez v. State, 707 S.W.2d 575, 579–80 (Tex.Crim.App.1986); Cuellar v. State, 613 S.W.2d 494, 495 (Tex.Crim.App. 1981). In Texas, the prohibition is without reference to whether the defendant has been advised of his right to remain silent, since an accused's right to be free from compelled self-incrimination under the Texas Constitution arises at the moment arrest is effectuated. See Sanchez, 707 S.W.2d at 579–80.

The instant case is distinguishable from cases where a comment on the accused's post-arrest silence is permissible when the accused testified at trial. See Waldo v. State, 746 S.W.2d 750, 752 (Tex.Crim.App.1988) (court considered several factors in determining efficacy of curative instructions); Cisneros v. State, 692 S.W.2d 78 (Tex.Crim.App. 1985), and cases cited therein (Fifth Amendment not violated .by use of post-arrest silence to impeach defendant's credibility on stand); Juhasz v. State, 827 S.W.2d 397, 405 (Tex.App.—Corpus Christi 1992, pet. ref'd) (permissible attack on appellant's credibility); Mowbray v. State, 788 S.W.2d 658, 666 (Tex. App.—Corpus Christi 1990, pet. ref'd), cert. denied, 498 U.S. 1101, 111 S.Ct. 999, 112 L.Ed.2d 1082 (1991) (plausible to inquire into post-arrest silence); LaSalle v. State, 771 S.W.2d 636 (Tex.App.—Corpus Christi 1989, pet. ref'd) (defendant testified, harmless error where no further objections made during continued line of questioning). Appellant did not testify.

In Cisneros, the court stated,

While the Fifth Amendment prevents the prosecution from commenting on the silence of a defendant who asserts the right to remain silent during his criminal trial, it is not violated when a defendant, who testifies in his own defense, is impeached with his prior silence.

Cisneros, 692 S.W.2d at 84. We acknowledge that the federal constitutional impropriety of commenting on the post-arrest si-

---

8. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

lence of a non-testifying defendant may appear much clearer than when the defendant takes the stand, whereupon he may be cross-examined and impeached in the same manner as any other witness. *Id.* at 83. We find that the complained-of conduct in the present case is similar to that at issue in *Fletcher v. State*, 852 S.W.2d 271 (Tex.App.—Dallas 1993, pet. ref'd). In *Fletcher*, a police detective was asked whether the defendant ever gave a written statement. The detective responded that he did not, and defense counsel objected on Fifth Amendment grounds. The trial court sustained the objection, overruled his motion for mistrial, and instructed the jury to disregard the line of questioning.

Like the *Fletcher* court, we are not persuaded that the complained-of comment constitutes an improper reference to appellant's post-arrest silence. Nevertheless, even if we were to assume that it did, we would find that the trial court's instruction to disregard was adequate to cure any error. Appellant has failed to show any prejudicial effect. Appellant's second point of error is overruled.

We AFFIRM the judgment of the trial court.