In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-06-00078-CR


______________________________




BRIAN ELLIS PATRICK, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 354th Judicial District Court


Hunt County, Texas


Trial Court No. 23162




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Chief Justice Morriss



MEMORANDUM OPINION



 When a heated argument over a dog turned to physical violence, James Ray Prothro (James) (1) 
died and Brian Ellis Patrick (Brian), the person James had wrongfully (2) accused of giving away his
dog, was sent to prison for a first-degree felony. This appeal concerns the punishment given to
Brian, who admittedly killed James. (3) We affirm the trial court's judgment because the evidence is
factually sufficient to support the trial court's finding that Brian did not act with sudden passion
arising from adequate cause.

 In a factual sufficiency review, (4) we view all the evidence in a neutral light and determine
whether the evidence supporting the verdict is so weak that the fact-finder's verdict is clearly wrong
and manifestly unjust or whether the great weight and preponderance of the evidence is contrary to
the verdict. Watson v. State, 204 S.W.3d 404, 417 (Tex. Crim. App. 2006); see also Johnson v.
State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000); Clewis v. State, 922 S.W.2d 126, 134 (Tex. Crim.
App. 1996). It is the fact-finder's job to judge the credibility of the witnesses and the weight to be
given their testimony, and the fact-finder "may resolve or reconcile conflicts in the testimony,
accepting or rejecting such portions thereof as it sees fit." Banks v. State, 510 S.W.2d 592 (Tex.
Crim. App. 1974); see also Scott v. State, 814 S.W.2d 517, 518-19 (Tex. App.--Houston [14th
Dist.] 1991, pet. ref'd). When evidence both supports and conflicts with the verdict, we must assume
that the fact-finder resolved the conflict in favor of the verdict. Turro v. State, 867 S.W.2d 43, 47
(Tex. Crim. App. 1993); see also Marshall, 2006 Tex. Crim. App. LEXIS 2444, at *15 ("our factual-sufficiency jurisprudence still requires an appellate court to afford 'due deference' to the jury's
determinations"). Again, our role is not to "find" facts; rather, it is to determine whether the verdict
is against the great weight of the evidence presented at trial so as to be clearly wrong and unjust. 
Ballard v. State, 161 S.W.3d 269, 277 (Tex. App.--Texarkana 2005), aff'd, 193 S.W.3d 916 (Tex.
Crim. App. 2006) ("trial court, acting as finder of fact in the face of conflicting evidence, was
authorized to believe or disbelieve any portion of the evidence").

 If a convicted killer proves by a preponderance of the evidence that he or she "caused the
death under the immediate influence of sudden passion arising from an adequate cause," then the
applicable punishment range for the offense drops from that provided for a first-degree felony to the
range provided for a second-degree felony. Tex. Penal Code Ann. § 19.02(d). The Legislature has
defined "sudden passion" to mean "passion directly caused and arising out of provocation by the
individual killed or another acting with the person killed which passion arises at the time of the
offense and is not solely the result of former provocation." Tex. Penal Code Ann. § 19.02(a)(2). 
"Adequate cause" means "cause that would commonly produce a degree of anger, rage, resentment,
or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection." 
Tex. Penal Code Ann. § 19.02(a)(1).

 In this case, there is conflicting evidence on the issue of sudden passion.

 Detective Christopher Vaughn (Vaughn) of the Commerce Police Department arrived at the
scene shortly after the shooting occurred and was able to interview several of the witnesses. (5) Many
of these witnesses indicated Brian and James had been arguing on the north side of James' house
June 30, 2005. During that time, James had threatened Brian by waving a shovel at him. At one
point, Angela (James' wife) intervened, took the shovel away from James, and told Brian to leave
the premises. Brian, however, did not leave. 

 A few minutes later, James threw a ball-peen hammer at Brian (which Vaughn testified could
have injured or killed Brian, had he not been able to duck out of the way). Now weaponless, James
charged Brian, who drew his gun, fired two warning shots into the ground, and then fired a third shot
into James' shoulder after James did not heed the prior warning shots. 

 According to the testimony presented, James did not usually carry a gun. Evidence indicated
neither that James had possession of a firearm on the day in question, nor that police found any
firearm in James' possession following his death. Brian himself even admitted at trial that James did
not have a gun or other weapon at the time of the shooting. Accordingly, the evidence in this case
would not support a claim that Brian used deadly force in self-defense. See Tex. Penal Code Ann.
§ 9.31(a) (Vernon 2003). Brian also testified he had not felt the need to use deadly force in response
to either having a hammer thrown at him or a shovel waived menacingly in his direction. See id.
(actor must reasonably believe force is "immediately necessary").

 Brian testified he shot James because he could not retreat further and because he feared
James would take the gun away and use it. Brian also told the trial court that he fired the third (and
fatal) shot as he tripped and fell backward, with James still advancing aggressively. Such testimony
suggests the bullet would have entered James' shoulder from an angle below the point of entry and
then traveled upward through the shoulder. To the contrary, the autopsy report indicated the fatal
wound was fired with the gun located above, with the bullet then traveling in a downward direction
into James' shoulder. 

 Angela had earlier testified that Brian could have previously left the premises and walked to
his house (which was next door) after James had thrown the hammer. According to Angela's
continued testimony, she told Brian to leave the area shortly after the initial verbal spat between
James and Brian, but Brian had failed to heed Angela's advice. 

 This evidence suggests that the murder was not premeditated, but was instead the product
of impulsive conduct. But the contradictory evidence presented the trial court with a factual issue
regarding whether the killing was done under "sudden passion" prompted by "adequate cause." In
this case, the trial court answered that question in the negative.

 The trial court, acting as the fact-finder, was in the best position to judge witness credibility. 
This fact is key, because Brian's sudden-passion claim rises or falls on whether the trial court
believed critical testimony supporting that claim. First, the trial court had before it the results of the
autopsy report, which clearly contradicted that part of Brian's testimony in which he claimed he shot
from a position below James, upward into James' chest. That conflict could have undoubtedly
diminished the trial court's belief of Brian's other testimony. Second, the trial court could have given
no credence to the accused's testimony that he believed he was unable to retreat further and that
James would have taken the gun away and used it against the accused. Third, the trial court heard
Angela's testimony that Brian had been told to leave the area, had been given an opportunity to do
so, and had failed to heed that warning. This testimony suggests Brian had been given an
opportunity to pause and reflect on how to alleviate the tense situation by leaving the area, but he
instead chose to remain and continue the confrontation. Fourth, the evidence is unequivocal that
James did not have a firearm and that it was Brian who introduced this deadly weapon into the
fracas. The trial court could have reasonably concluded that had Brian not been illegally carrying
the weapon, (6) that had Brian left James' property in accordance with the instructions of James' wife,
or that had Brian not himself drawn the weapon from its hidden location in his pants and thereby
introduced the gun into the altercation, then James might not have been killed. Fifth, the trial court
could also have reasonably concluded, based on its evaluation of witness credibility and resolution
of evidentiary conflicts, that James' mere act of angrily charging toward Brian--at a time when all
witnesses agreed that James was without any type of weapon--did not provide Brian with adequate
cause to use the gun. And, finally, the trial court could have reasonably concluded Brian, amidst the
chaos of the shooting, did have a moment to coolly deliberate on his conduct and its consequences
because Brian was able to articulate at trial the distinct rationalization that went through his mind
before firing the gun a third time, testimony that at least suggested Brian was capable of engaging
in a deliberate assessment of his conduct just before firing the gun a third time. In sum, from the
evidence presented, the trial court could have reasonably concluded that James' act of merely
advancing angrily toward Brian was insufficient to justify the degree of "terror," "rage," or
"resentment" required to justify Brian's response of deadly force. 

 This result is reasonable in light of Brian's own testimony that James' earlier threats with the
shovel and hammer had evoked no feeling of need to then respond with deadly force. It logically
follows that a "lesser" threat from James (via one which did not employ the use of a weapon such
as a shovel or hammer) would not justify an "escalated" response from Brian (by using a deadly
weapon) when those earlier threats had failed to evoke a similarly strong emotion from the accused.

 Under this state of the evidence, the trial court's determination that Brian did not act with
sudden passion provoked by adequate cause was supported by factually sufficient evidence, and the
trial court's judgment is not clearly wrong or manifestly unjust. Cf. Johnson v. State, 815 S.W.2d
707, 711 (Tex. Crim. App. 1991) (affirming murder conviction; fact-finder could reject sudden
passion claim if it found no provocative conduct, no adequate case, or that defendant acted
deliberately rather than in moment "incapable of cool reflection"); Garza v. State, 878 S.W.2d 213,
216-19 (Tex. App.--Corpus Christi 1994, pet. ref'd) (holding there was sufficient evidence from
which fact-finder could have concluded murder was not product of sudden passion arising out of
adequate provocation); Scott, 814 S.W.2d at 519-20 (conducting legal sufficiency review of jury's 




finding that appellant's homicidal conduct was not product of "sudden passion"; conviction
affirmed). Accordingly, we overrule Brian's sole point of error and affirm the trial court's judgment.

 





 Josh R. Morriss, III

 Chief Justice


Date Submitted: January 24, 2007

Date Decided: January 26, 2007


Do Not Publish
1. There are several witnesses in this case that share last names. To avoid confusion, we will
refer to the appellant and all non-police witnesses by their first names.
2. Unbeknownst to James, it was his wife who had given away his dog.
3. Brian pled "guilty" to killing James by shooting him with a firearm. See Tex. Penal Code
Ann. § 19.02(a) (Vernon 2003). The issue of punishment was submitted to the trial court, and Brian
argued he killed James while acting under sudden passion--an affirmative defense that, if proven
by a preponderance of the evidence, lessens the applicable punishment range to that provided for a
second-degree felony. See Tex. Penal Code Ann. § 19.02(d) (Vernon 2003). The trial court
disagreed with Brian's sudden passion argument and sentenced him to twenty-five years'
imprisonment, which is within the range provided for a first-degree felony and outside the range
provided for a second-degree felony. Compare Tex. Penal Code Ann. § 12.32(a) (Vernon 2003)
(first-degree punishable by life or not less than five nor more than ninety-nine years' imprisonment)
with Tex. Penal Code Ann. § 12.33(a) (Vernon 2003) (second-degree punishable by not less than
two nor more than twenty years' imprisonment). Brian now appeals, contending the evidence is
factually insufficient to support the trial court's conclusion that he did not act with sudden passion. 
4. "A factual-sufficiency review is 'barely distinguishable' from a Jackson v. Virginia legal
sufficiency review." Marshall v. State, No. AP-75,048, 2006 Tex. Crim. App. LEXIS 2444, at *14
(Tex. Crim. App. Dec. 20, 2006).
5. Brian had already fled the scene after the shooting when Vaughn arrived. Vaughn did not
interview Brian until a later point in time. 
6. Brian was a convicted felon who had been released from prison less than two months before
he shot James. Generally, a convicted felon may not possess a firearm before the fifth anniversary
of his or her release from confinement or community supervision for the felony offense. See Tex.
Penal Code Ann. § 46.04 (Vernon Supp. 2006). For more information regarding his appeal of the
conviction   for   possessing   the   firearm,   see   our   opinion   in   Patrick   v.   State,   cause
number 06-06-00079-CR.



/>
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 












 
 
 
 
 
 
 




 

 

 

 

 

 

 

 

 

                                                         In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-10-00126-CV

                                                ______________________________

 

 

                 ROYAL IMPORTS, INC., D/B/A CROWN KIA,
Appellant

 

                                                                V.

 

                                          COMPASS BANK, Appellee

 

 

                                                                                                  


 

 

                                       On Appeal from the County
Court at Law No. 2

                                                             Gregg County, Texas

                                                   Trial Court No. 2009-1623-CCL2

 

                                                     
                                             

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                        Memorandum Opinion by Chief Justice Morriss








                                                      MEMORANDUM OPINION

 

            Royal Imports, Inc., d/b/a Crown Kia, the sole appellant
in this case, has filed a motion seeking to dismiss its appeal.  Pursuant to Rule 42.1 of the Texas Rules of
Appellate Procedure, the motion is granted. 
Tex. R. App. P. 42.1.

            We
dismiss the appeal.

 

                                                                        Josh
R. Morriss, III

                                                                        Chief
Justice

 

Date Submitted:          April
11, 2011

Date Decided:             April
12, 2011