Affirmed and Memorandum Opinion filed May 19, 2009








Affirmed and Memorandum Opinion filed May 19, 2009.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-08-00480-CR

NO. 14-08-00481-CR

____________

 

EARL THOMPSON, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 263rd
District Court

Harris County, Texas

Trial Court Cause Nos. 1129754
& 1091097

 



 

M E M O R A N D U M   O P I N I O N

A jury found appellant Earl Thompson guilty of stalking and
unlawfully carrying a weapon in a liquor-licensed premises.  The jury assessed
punishment for both cases at five years= imprisonment in
the Texas Department of Corrections, Institutional Division, but recommended
community supervision for five years in the weapon case.  The trial court
sentenced appellant to five years= imprisonment for
each offense, and in the weapon case the court suspended the sentence and
placed appellant on community supervision for ten years.








On appeal, appellant raises two issues.  In the first, he
contends the trial court erred by denying a mistrial after the State, in the
jury=s presence,
questioned the arresting officer regarding appellant=s post-arrest
silence.  In his second issue, appellant contends the trial court erred in
making an incorrect statement regarding the law of juror disqualification to
the venire.  We affirm.

Background

Appellant does not challenge the legal or factual
sufficiency of the evidence supporting his convictions, so we only briefly
recount the facts.  On October 25, 2006, appellant began sending Suzi Hanks, a
Houston radio personality, a series of strange and threatening emails.  The
emails included references to guns, Jack the Ripper, and a bronze chariot; they
also contained sexual innuendos.  In the emails, appellant used the names Earl
Thompson, Mystery Knight, Knights Elite, Saucy Jack, Black Jack, and Jack
Porns.  These emails made Hanks Avery afraid,@ and she told her
supervisor about them and reported the situation to the Pasadena Police
Department.  Hanks did not respond to any of the emails, which prompted
appellant to make numerous unsuccessful attempts to telephone her at the radio
station where she worked.  

On October 31, 2006, Hanks=s radio station
planned a live broadcast from Vito=s Deck House to
promote a Halloween costume contest.  When Hanks arrived, she told the promotion
workers who were already there about the emails, and let them know that she was
nervous about the situation.  When she walked in, she saw a man in a booth
dressed in black, and he Aimmediately made eye contact with [her]
and got kind of very excited.@  Concerned, Hanks told the promotion
workers there was a Aguy sitting in the booth@ and asked them to
keep an eye on her.








As they broadcasted, people came by to pick up koozies,
t-shirts, and other promotional items.  Eventually, appellant, who indeed was
the Aguy sitting in the
booth,@ approached the
table and introduced himself as AJack Porns.@  Hanks was Apetrified.@  She gave him a
t-shirt and tried to get him to leave.  After appellant walked away, Hanks was
so frightened that she went out to her car to get her gun, for which she had a
concealed-handgun license.  In the parking lot, she saw a bronze Lincoln Town
Car in a handicapped parking space and was reminded of the email references to
a bronze chariot.  At that point, Hanks realized that the emails from Jack
Porns and Earl Thompson were from the same person. 

Hanks called 911, and while she was speaking to the
dispatcher, she saw a police car and flagged it down.  As she was talking to
the police officer, the promotion workers came outside and handed her a
threatening note that appellant had given them.  While they were talking, a
waitress came out and handed them a note she had found in the restroom, which
was a poem about Jack the Ripper.  

The officer called for assistance, and when the other
officers arrived, they detained appellant.  Appellant had a concealed-handgun
permit, and officers found a loaded Derringer handgun in his pocket.  The
officers arrested appellant for unlawfully carrying a weapon inside a bar, and
handcuffed him with his hands behind his back.  Appellant requested that he be
handcuffed in front, but his request was denied.  Later, at the jail, officers
discovered that appellant had concealed a second handgun in a Apouch that covered
his crotch.@  Additionally, in a black bag that appellant had with
him, police found a pair of rubber gloves and a steak knife.  

Analysis








Appellant raises two issues on appeal in which he asserts:
(1) the trial court erred by denying a mistrial after the State, in the jury=s presence,
questioned the arresting police officer regarding appellant=s post-arrest
silence; and (2) the trial court erred by making incorrect statements regarding
the law of juror disqualification to the venire during voir dire.  For the
reasons explained below, we overrule both issues and affirm the trial court=s judgment.

A.      Questioning
Regarding Post-Arrest Silence

In his first issue, appellant complains about the following
exchange between the prosecutor and police officer Jamie Sherrill:

Q [State]:  Okay.  Now, real quickly, while B B how long were you with the defendant once he was
handcuffed, from the time you handcuffed him, put him in the back of your car,
drove down to the jail?

A [Witness]:  Actual time, I would say approximately 30, 45 minutes.

Q:  Okay.  Is it fair to say that during that 30 to 45 minutes he had
plenty of opportunities to tell you whether or not he had a gun on him?

A:  Yes.

At this point, appellant=s attorney
objected and, at the bench, specifically complained that the questioning was
commenting on appellant=s right to remain silent.  The prosecutor
responded that he did not intend to elicit evidence regarding the defendant=s post-arrest
silence, but the trial court admonished him, saying AYou really went
over the line there.  I=m going to try to fix that with a motion
to disregard.  Be careful in the future.@  Before the jury,
the trial court sustained appellant=s objection and
then gave the jury this instruction: ALadies and
gentlemen, you=ll disregard the last question and the last answer
that was had by both the State and this witness.@  The court denied
appellant=s request for a mistrial.








We review the trial court=s denial of a
motion for mistrial under an abuse-of-discretion standard.  Hawkins v. State,
135 S.W.3d 72, 77 (Tex. Crim. App. 2004).  The Court of Criminal Appeals has
determined that whether a trial court should have granted a mistrial involves
most, if not all, of the same considerations that attend a harm analysis.  Archie
v. State, 221 S.W.3d 695, 700 (Tex. Crim. App. 2007).  To determine whether
a trial court abused its discretion, therefore, the court has instructed that
it is appropriate to apply the test articulated in Mosley v. State, 983
S.W.2d 249, 259 (Tex. Crim. App. 1998).  Id.  The test requires a
balancing of three factors: (1) the severity of the misconduct; (2) the
measures adopted to cure the misconduct; and (3) the certainty of conviction
absent the misconduct.  See id.

A comment on the defendant=s post-arrest
silence violates the defendant=s rights under the Fifth Amendment of the
United States Constitution and article I, section 10 of the Texas Constitution,
as well as Texas statutory law.  See Doyle v. Ohio, 426 U.S. 610, 618
(1976); Dinkins v. State, 894 S.W.2d 330, 356 (Tex. Crim. App. 1995);
Tex. Code Crim. Proc. Ann. art. 38.08 (Vernon 2005).  Nevertheless, a mistrial
is required only in extreme circumstances, when the prejudice is incurable.  Archie,
221 S.W.3d at 699; Austin v. State, 222 S.W.3d 801, 815 (Tex. App.CHouston [14th
Dist.] 2007, pet. ref=d), cert. denied, 128 S. Ct. 1230
(2008).

Moreover, an instruction to disregard an improper comment
on an appellant=s post-arrest silence is generally
sufficient to cure any harm.  Ho v. State, 171 S.W.3d 295, 306 (Tex.
App.CHouston [14th
Dist.] 2005, pet. ref=d) (citing Dinkins v. State, 894
S.W.2d at 356; Hyett v. State, 58 S.W.3d 826, 833 (Tex. App.CHouston [14th
Dist. 2001, pet. ref=d)); Perez v. State, 187 S.W.3d
110, 113 (Tex. App.CWaco 2006, no pet.); see also Garza
v. State, 878 S.W.2d 213, 221 (Tex. App.CCorpus Christi
1994, pet. ref=d).  We presume the jury obeyed the trial court=s instruction
absent evidence that would suggest otherwise.  See Thrift v. State, 176
S.W.3d 221, 224 (Tex. Crim. App. 2005); Gardner v. State, 730
S.W.2d 675, 696 (Tex. Crim. App. 1987).  In determining whether a new trial is
mandated despite the instruction to disregard, we look at the particular facts
and circumstances to see if the trial court=s instruction
sufficiently diffused the harm.  See Moore v. State, 278 S.W.3d 444, 450
(Tex. App.CHouston [14th Dist.] 2009, no pet.) (citing Hawkins,
135 S.W.3d at 77)). 








Although the complained-of exchange amounted to an improper
comment on appellant=s post-arrest silence, a prompt
instruction to disregard was enough to fix it.  The trial court immediately
sustained appellant=s objection to the exchange and promptly
instructed the jury to disregard it.  The instruction was clear and direct, and
the State did not comment on the matter again.  Although appellant complains
that Ait was beyond the
power of the court to eradicate the State=s action or to
prevent the jury from being influenced,@ nothing about the
exchange suggests that the trial court=s instruction was
not effective.  

Besides, the State=s case against
appellant was overwhelming.  The State proved that appellant carried two
handguns onto a liquor-licensed premises; handguns that the police recovered
and the State admitted into evidence.  The State also proved that appellant
sent unsolicited bizarre and threatening emails to Hanks, that he called her
repeatedly at the radio station where she worked, that he came to Vito=s to see her, and
that he sent her a threatening message while at that establishment. 
Additionally, appellant took the stand in his defense, and, although he stated
that he did not intend the emails to be threatening, he admitted that he sent
them to Hanks and that he Akept calling@ her at the radio
station.  He also admitted that he asked someone at Vito=s to hand Hanks
the threatening note referencing Jack the Ripper, and that he had a handgun
with him when he went to Vito=s.  The State also offered evidence that
appellant attempted to maintain access to the second handgun that remained
concealed on his person even after he was in custody.  In light of the evidence
presented at trial, the one brief comment on appellant=s post-arrest
silence had minimal, if any, effect on the outcome of the trial. 

The trial court=s prompt
instruction to disregard was sufficient, and the trial court did not abuse its
discretion in denying appellant=s request for a mistrial.  We overrule
appellant=s first issue.

B.      Statement
to Venire

In his second issue, appellant contends that the trial
court made an incorrect statement of law to the jury venire during the voir
dire process.  Appellant complains of the following italicized statements the
trial court made as it explained the qualifications for jury service:








You can never have been convicted of a felony in
this state or any other.  You can=t be on any type of a felony probation nor awaiting trial
for a felony.

You cannot have
been convicted for a misdemeanor involving moral turpitude, which
mainly deals with prostitution or theft cases.  You can=t be awaiting
trial for a misdemeanor involving moral turpitude case or be on
probation for a misdemeanor involving moral turpitude.  The reason, of
course, if you=re involved in any of those types of proceedings, you
may be biased, and so we try to eliminate that by saying you just can=t sit on the jury
if you=re involved in
that.

Specifically,
appellant contends that a misdemeanor prostitution conviction is not a
disqualification to serve as a juror, and the trial court=s reference to
crimes of moral turpitude is a reference to a term applied in the context of
impeachment, not jury qualification.  See Tex. Gov=t Code Ann. ' 62.102 (Vernon
2005 & Supp. 2008); Tex. Code Crim. Proc. Ann. art. 35.16(a)(2) (Vernon
2006); Tex. R. Evid. 609.  Thus, appellant submits, the trial court=s statements of
the law concerning qualifications to serve on a jury in a criminal case were
improper. 

In response, the State contends that appellant did not
object to the trial court=s statement, and his failure to raise the
issue below precludes this court=s review.  We
agree.  See, e.g., Beltran v. State, 99 S.W.3d 807, 811 (Tex. App.CHouston [14th
Dist.] 2003, pet. ref=d); Oulare v. State, 76 S.W.3d 231,
233B34 (Tex. App.CAmarillo 2002, no
pet.); Rabago v. State, 75 S.W.3d 561, 562B63 (Tex. App.CSan Antonio 2002,
pet. ref=d). By failing to
voice any objection to the trial court=s statement,
appellant waived this complaint. We overrule appellant=s second issue.

We affirm the trial court=s judgments.

 

 

/s/      Jeffrey V. Brown

Justice

 

Panel consists of
Justices Frost, Brown, and Boyce.

Do Not Publish C Tex. R. App. P. 47.2(b).